THE HONORABLE THOMAS O. RICE

1

2   Francis S. Floyd, WSBA No. 10642
    ffloyd@floyd-ringer.com
3   John A. Safarli, WSBA No. 44056
    jsafarli@floyd-ringer.com
4   Floyd, Pflueger & Ringer, P.S.
    200 W. Thomas Street, Suite 500
5   Seattle, WA  98119-4296
    Tel (206) 441-4455
6   Fax (206) 441-8484
7   *Attorneys for Defendants*

8

9

10              UNITED STATES DISTRICT COURT

11            EASTERN DISTRICT OF WASHINGTON

12

13  ROGELIO MONTES and MATEO
    ARTEAGA,                              NO.  12-cv-3108-TOR
14
                                          DEFENDANTS' STATEMENT OF
15              Plaintiffs,               MATERIAL FACTS

16      vs.                               Telephonic Argument
                                          August 18, 2014 – 9:00 A.M.
17  CITY OF YAKIMA; MICAH                 Call-in Number: (888) 273-3658
    CAWLEY, in his official capacity as   Access Code: 2982935
18  Mayor of Yakima; and MAUREEN          Security Code: 3018
    ADKISON, SARA BRISTOL, KATHY
19  COFFEY, RICK ENSEY, DAVE ETTL,
    and BILL LOVER, in their official
20  capacity as members of the Yakima City
    Council,
21
22              Defendants.
23

24

25

1

## **TABLE OF CONTENTS**

2   A.   Yakima's Current Election System ................................................................ 1

3   B.   The Instant Action ........................................................................................ 1

4   C.   Mr. Cooper's First Expert Report .............................................................. 3

5   D.   Dr. Morrison's Criticisms of Mr. Cooper's Hypothetical Plans ................ 6

6   E.   Mr. Cooper's Second Expert Report .......................................................... 8

7   F.   Mr. Cooper's Deposition .......................................................................... 12

8   G.   Dr. Morrison's Deposition........................................................................ 15

9   H.   Mr. Cooper's Third Expert Report ........................................................... 19

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119·4296
TEL 206 441·4455
FAX 206 441·8484

1    Pursuant to Local Rule 56.1, Defendants submit this Statement of Material
2 Facts in support of their Summary Judgment Motion.

3    **A.    Yakima's Current Election System**

4    1.    The Yakima City Council is composed of seven Councilmembers.
5 (Declaration of John A. Safarli ("Safarli Decl."), Exhibit A [Charter of the City of
6 Yakima effective August 20, 2013] at 3.)

7    2.    Three Councilmembers are elected from the City at-large, without
8 regard to residence in any particular area of the City. (*Id.*at 3-4.) These
9 Councilmembers are chosen at-large in both the primary and general elections.
10 (*Id.*)

11    3.    The remaining four seats on the Council are assigned to one of four
12 districts. The Councilmember running for one of these seats must reside within
13 that district. (*Id.*)

14    4.    In the primary election, only voters residing within a district cast
15 votes for candidates who also live within the district. (*Id.* at 4.)

16    5.    The names of up to two candidates from each district who received
17 the most votes then appear on a citywide general ballot. (*Id.*) This method was
18 adopted through a City charter amendment approved by City voters in November
19 1976. (Safarli Decl., Ex. B [Charter amendment signed December 6, 1976] at 1-
20 3.)

21    **B.    The Instant Action**

22    6.    Plaintiffs filed this action in August 2012 against the City and the
23 Councilmembers who were serving on the City Council at the time of filing.
24 (ECF No. 1.)

25

DEFENDANTS' STATEMENT OF MATERIAL FACTS - 1

1

2

3

4

7.     Plaintiffs alleged that the City's method of electing Council members violated Section 2 because it "impermissibly dilutes the Latino vote, [and] does not allow for equal participation by Latinos in the political process." (*Id.*)

5

6

7

8

9

8.     Plaintiffs also claimed that the first *Gingles* factor could be satisfied because the "Latino community in the City of Yakima is sufficiently numerous and geographically compact such that one or more properly apportioned single-member electoral districts can be drawn in which Latinos would constitute an effective majority of eligible voters." (*Id.* at 8.)

10

11

9.     Defendants responded by denying Plaintiffs' allegations. (ECF No. 18.)

12

13

14

15

10.     Defendants also raised the affirmative defense that "[t]he relief sought by Plaintiffs impermissibly departs from the one-person, one-vote principle in violation of the Fourteenth Amendment to the United States Constitution." (*Id.* at 8.)

16

17

18

19

20

11.     Defendants also pled that Plaintiffs' complaint was "barred by the affirmative defense of illegality." (*Id.* at 9.) In particular, Defendants alleged that Plaintiffs' complaint "violate[d] Section 2 of the Voting Rights Act's prohibition against voting schemes designed to effect racially proportional representation."[1] (*Id.*)

21

22

_____

23

24

25

[1] In Defendants' Summary Judgment Motion, Defendants contend that Plaintiffs' case also violates Section 2's prohibition on vote dilution. Although this argument is a variation of the general illegality defense that was pled in

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119-4296
TEL 206 441-4455
FAX 206 441-8484

### C.   Mr. Cooper's First Expert Report

12.   To establish the first *Gingles* factor, Plaintiffs retained William S. Cooper, an expert witness with experience in demographics and redistricting. (Safarli Decl., Ex. C [Declaration of William Cooper] at 1-2.)

13.   Mr. Cooper opined that the first *Gingles* factor could be met because "it is possible to create two out of seven City Council districts where Latinos of voting age would be a majority and where Latino registered voters would compromise a majority of registered voters." (*Id.* at 2.)

14.   To support his opinion, Mr. Cooper's report presented two hypothetical redistricting plans, Illustrative Plans 1 and 2. (*Id.* at 22-25.)

15.   Both plans divided the City into seven, single-member districts. (*Id.* at 23, 25.)

16.   Mr. Cooper's expert report listed the population for each district. His report also contained the percentage of each district's Latino citizen, voting-age population ("LCVAP").

---

Defendants' answer, Defendants intend to file a stipulated motion that amends their answer to specifically allege that Plaintiffs' complaint "violates Section 2 of the Voting Right Act's prohibition against voting schemes designed to effect racially proportional representation *and Section 2 of the Voting Right Act's prohibition against vote dilution*" (additional language emphasized). Pursuant to Fed. R. Civ. P. 15(a)(2), Plaintiffs have consented to this limited amendment and a motion is forthcoming.

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119·4296
TEL 206 441·4455
FAX 206 441·8484

17.    Each illustrative plan contained one majority-minority district. (*Id.*) The majority-minority district in Illustrative Plan 1 has a LCVAP of 50.25%. Illustrative Plan 2's majority-minority district has a LCVAP of 50.13%. Mr. Cooper noted that "[a] significant segment of the Latino population in Yakima is non-citizen." (*Id.* at 11.) He also cited estimates from the U.S. Census Bureau showing that slightly less than half of Latino adults in Yakima are non-citizens. (*Id.*)

18.    Through subsequent communications with Plaintiffs' counsel, Defendants obtained the absolute number of Latino and non-Latino voting-age citizens in each district. (Safarli Decl., Ex. D [letter of Plaintiffs' counsel Ben Stafford dated February 21, 2013] at 3.)

19.    The following tables contain the aggregate data for Mr. Cooper's Illustrative Plans 1 and 2. The figures for each district's total population, Latino eligible voter population, and non-Latino eligible voter population were provided by Mr. Cooper or Plaintiffs' counsel. The other columns of data were calculated by Defendants' counsel.

//

//

//

//

//

//

//

//

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119-4296
TEL 206 441-4455
FAX 206 441-8484

*Illustrative Plan 1*

| District | Pop. | % CVAP of pop. | CVAP | Latino CVAP | Non-Latino CVAP | % Latino CVAP of overall CVAP | Ratio of CVAP to pop. | % deviation of CVAP from mean[2] |
|---|---|---|---|---|---|---|---|---|
| 1 | 12533 | 35.21% | 4414.08 | 2217.91 | 2196.17 | 50.25% | 2.84 | -43.02% |
| 2 | 13358 | 39.18% | 5233.29 | 2258.08 | 2975.21 | 43.15% | 2.55 | -32.45% |
| 3 | 12859 | 70.44% | 9058.30 | 2144.56 | 6913.74 | 23.68% | 1.42 | +16.92% |
| 4 | 13175 | 57.68% | 7599.76 | 2018.64 | 5581.12 | 26.56% | 1.73 | -2.90% |
| 5 | 12683 | 70.62% | 8956.33 | 1099.23 | 7857.10 | 12.27% | 1.42 | +15.60% |
| 6 | 13176 | 72.18% | 9511.15 | 677.69 | 8833.46 | 7.13% | 1.39 | +22.76% |
| 7 | 13283 | 71.23% | 9460.91 | 1338.07 | 8122.84 | 14.14% | 1.40 | +22.11% |
| Total | 91067 | n/a | 54233.82 | 11,754.18 | 42479.64 | n/a | n/a | **65.78%[3]** |

*Illustrative Plan 2*

| District | Pop. | % CVAP of pop. | CVAP | Latino CVAP | Non-Latino CVAP | % Latino CVAP of overall CVAP | Ratio of CVAP to pop. | % deviation of CVAP from mean |
|---|---|---|---|---|---|---|---|---|
| 1 | 12969 | 35.06% | 4546.63 | 2279.36 | 2267.27 | 50.13% | 2.85 | -41.31% |
| 2 | 12822 | 39.76% | 5097.51 | 2172.07 | 2925.44 | 42.61% | 2.52 | -34.19% |
| 3 | 13079 | 70.21% | 9183.10 | 2171.92 | 7011.18 | 23.65% | 1.42 | +18.55% |
| 4 | 13431 | 57.40% | 7709.31 | 2063.73 | 5645.58 | 26.77% | 1.74 | -0.47% |
| 5 | 12761 | 70.77% | 9030.36 | 1055.32 | 7975.04 | 11.69% | 1.41 | +16.57% |
| 6 | 12722 | 72.29% | 9197 | 673.72 | 8523.28 | 7.32% | 1.38 | +18.73% |
| 7 | 13283 | 71.23% | 9460.91 | 1338.07 | 8122.84 | 14.14% | 1.40 | +22.13% |
| Total | 91067 | n/a | 54224.82 | 11754.19 | 42470.63 | n/a | n/a | **63.44%** |

---

[2] The percentage deviation from the mean is calculated by (1) determining the average CVAP for each district (*e.g.*, 54224.82 divided by 7, or 7747.69); (2) dividing Mr. Cooper's CVAP figure for that district by the average CVAP figure (*e.g.*, 4414.08 divided by 7747.69, or 0.57); and (3) subtracting 1 from that number (-0.43), then converting it into a percentage (-43%).

[3] This figure represents the maximum deviation—that is, the value of the range between the greatest negative deviation from the mean (-43.02%) and the district with the greatest positive deviation from the mean (+22.76%).

DEFENDANTS' STATEMENT OF MATERIAL FACTS - 5

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119-4296
TEL 206 441-4455
FAX 206 441-8484

20.     In Illustrative Plans 1 and 2, District 1 (the majority-minority district) has about half as many eligible voters as Districts 3, 5, 6, and 7, and about 60% as many eligible voters as District 4. Additionally, District 2 in both Illustrative Plans has between 54% to 58% as many eligible voters as Districts 3, 5, 6, and 7, and 66% to 69% as many eligible voters as District 4.

21.     In both Illustrative Plans 1 and 2, Mr. Cooper packed Districts 1 and 2 with people who are not eligible to vote. This results in the dilution of voting power among eligible voters of minority groups who reside in other districts. For example, Districts 1 and 3 in Illustrative Plan 1 each contain about 1/5th of the City's Latino eligible voters (2217.91 and 2144.56, respectively). However, District 1 contains about twice as many eligible voters overall as District 3. Consequently, an eligible Latino voter residing in District 3 has about half the voting strength as an eligible Latino voter from District 1.

**D.     Dr. Morrison's Criticisms of Mr. Cooper's Hypothetical Plans**

22.     To rebut Mr. Cooper's opinions, Defendants retained Peter Morrison, Ph.D., an applied demographer.[4] (Safarli Decl., Ex. E [Expert Report of Peter Morrison, Ph.D.].)

23.     Dr. Morrison criticized Mr. Cooper's report on a number of grounds, including the grossly malapportioned number of voting-age citizens in the

---

[4] The following day, Defendants disclosed a revised report that fixed the numbering of the paragraphs in Dr. Morrison's report. No other substantive changes were made. Defendants' Summary Judgment Motion relies on the version with the fixed paragraph numbers.

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119-4296
TEL 206 441-4455
FAX 206 441-8484

districts from Illustrative Plans 1 and 2. Dr. Morrison opined that Mr. Cooper's "single-minded purpose" was to create a district with a voting-age citizen population that was a majority Latino, even though that "would invariably cause the votes of eligible voters in that one district to carry far more weight than a vote in another district." (*Id.* at 14-15.)

24.    Dr. Morrison calculated that District 1 in Mr. Cooper's Illustrative Plan 1 contains approximately 1/7th or 14.3% of the City's total population (12,533 of 91,067) but only 1/13th or 8.4% of the City's eligible voters (4,414.08 out of 54,233.82). As such, "8.4% of eligible voters [in District 1] would necessarily exercise 14.3% of the power in electing City Council members—in effect, 'one person, 1.7 votes.'" (*Id.* at 15.) Meanwhile, District 7 in Mr. Cooper's Illustrative Plan 1 also contains about 14% of the City's population, but nearly 1/5th (17.4%) of the City's eligible voters (9,460.91 out of 54,233.82).

25.    Put differently, an eligible voter from District 1 casts a vote on behalf of 2.8 residents of that district, while an eligible voter from District 7 would cast a vote on behalf of 1.4 residents. This results in a "political premium" for votes in District 1, while votes in District 7 are "underweighted." (*Id.* at 15.) Dr. Morrison concluded that this "imbalance" results from Mr. Cooper "giving exclusive emphasis to Latino ethnicity in drawing each District 1." (*Id.* at 16.)

26.    Dr. Morrison also determined that a majority of the City's American Indian, Asian, and African American voting-age citizens would be underweighted because they would reside in districts with a high proportion of eligible voters. (*Id.* at 16.)

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119-4296
TEL 206 441-4455
FAX 206 441-8484

1    27.    At the conclusion of his discussion regarding the first *Gingles* factor,

2   Dr. Morrison posed two questions: First, "[i]s it constitutional to undersize the

3   citizen population in one (Latino) district while oversizing the citizen population

4   in another district? In other words, should only 4,414 or 4,547 citizens in

5   demonstration District 1 get to elect a member to the Yakima City Council . . .

6   while 9,461 or 9,511 citizens in a neighboring district get to elect another city

7   council member?" Second, "[w]ould this electoral imbalance cause the unlawful

8   dilution of votes cast by one or more protected groups (e.g. American Indians or

9   Asians) whose numbers are disproportionately concentrated outside

10  demonstration District 1?" (*Id.* at 17.)

11    **E.    Mr. Cooper's Second Expert Report**

12    28.    In his second expert report, Mr. Cooper created five new

13  hypothetical redistricting plans: Hypothetical Plans A through E. (Safarli Decl.,

14  Ex. F [Supplemental Declaration of William Cooper] at 12-13, 22-23, 25-30.)

15    29.    Mr. Cooper's plan included only the total population for each district

16  and the percentage of each district's population that are Latino eligible voters.

17    30.    Through subsequent correspondence, Defendants' counsel received

18  the absolute number of Latino and non-Latino eligible voters in each district.

19  (Safarli Decl., Ex. G [email of Abha Khanna dated May 1, 2013 and attachment]).

20  In the tables below, Defendants' counsel calculated the absolute number of

21  overall voting-age citizens and each district's percentage of the total population

22  that are eligible voters.

23

24

25

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119·4296
TEL 206 441·4455
FAX 206 441·8484

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

31.    According to Mr. Cooper, Hypothetical Plans A, B and C were created to address some of Dr. Morrison's criticisms that do not pertain to this motion. (Safarli Decl., Ex. F at 12, 22-27). But these three plans suffer from the same imbalance as Illustrative Plans 1 and 2: Districts 1 and 2 have nearly half as many eligible voters as Districts 3, 5, 6 and 7.

32.    Hypothetical Plans D and E were created in direct response to Dr. Morrison's conclusions regarding the imbalance in eligible voters throughout the districts. (*Id.* at 27-31.) Mr. Cooper's Hypothetical Plan D equalized the number of citizens in each district, which resulted in substantial deviations among each district's population. (*Id.* at 28.) Mr. Cooper's Hypothetical Plan E equalized the number of eligible voters in each district, which also caused significant population deviation. (*Id.* at 30.) Both Hypothetical Plans D and E contain a district in which the majority of eligible voters are Latino. (*Id.* at 28, 30.) However, Mr. Cooper distanced himself from these plans by stating that "I do not believe that *Hypothetical Plans D* or *E* should be relied upon for the first prong of *Gingles* or as appropriate remedies in this case." (*Id.* at 31.)

33.    Moreover, even though Mr. Cooper's Hypothetical Plans D and E equalized the number of citizens and adult citizens, respectively, the ratio of adult citizens to population varies wildly. For example, 35.54% of the population in Hypothetical Plan E's District 1 are adult citizens, while District 7's population is more than 70% adult citizens.

//

//

//

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119·4296
TEL 206 441·4455
FAX 206 441·8484

### *Hypothetical Plan A*

| District | Pop. | % CVAP of pop. | CVAP | Latino CVAP | Non-Latino CVAP | % Latino CVAP of overall CVAP[5] | Ratio of CVAP to pop. | % deviation of CVAP from mean |
|---|---|---|---|---|---|---|---|---|
| 1 | 12819 | 34.43% | 4414.20 | 2302.80 | 2111.40 | 52.17% or 50.18% | 2.90 | -43.02% |
| 2 | 12421 | 39.61% | 4920.30 | 2119.06 | 2801.24 | 43.07%/ or 41.81% | 2.52 | -36.49% |
| 3 | 13026 | 70.13% | 9135.01 | 2163.50 | 6971.51 | 23.68% or 24.16% | 1.42 | +17.91% |
| 4 | 12676 | 58.52% | 7455.41 | 1894.85 | 5560.56 | 25.42% or 25.78% | 1.7 | -3.77% |
| 5 | 13666 | 68.32% | 9336.82 | 1258.21 | 8078.61 | 13.48% or 13.54% | 1.46 | +20.51% |
| 6 | 13176 | 72.19% | 9511.15 | 677.69 | 8833.46 | 7.13% or 7.14% | 1.39 | +22.76% |
| 7 | 13283 | 71.23% | 9460.91 | 1338.07 | 8122.84 | 14.14% or 14.16% | 1.40 | +22.12% |
| Total | 91067 | n/a | 54233.8 | 11754.18 | 42479.62 | n/a | n/a | **65.78%** |

### *Hypothetical Plan B*

| District | Pop. | % CVAP of pop. | CVAP | Latino CVAP | Non-Latino CVAP | % Latino CVAP of overall CVAP | Ratio of CVAP to pop. | % deviation of CVAP from mean |
|---|---|---|---|---|---|---|---|---|
| 1 | 12995 | 31.69% | 4119.22 | 2311.53 | 1807.69 | 56.12% | 3.15 | -46.83% |
| 2 | 12706 | 48.01% | 6099.61 | 1946.17 | 4153.44 | 31.91% | 2.08 | -21.27% |
| 3 | 12632 | 68.49% | 8651.99 | 2207.27 | 6444.72 | 25.51% | 1.46 | +11.67% |
| 4 | 12866 | 54.96% | 7070.82 | 2126.57 | 4944.25 | 30.08% | 1.82 | -8.74% |
| 5 | 13323 | 69.05% | 9200.11 | 1055.72 | 8144.39 | 11.48% | 1.45 | +18.75% |
| 6 | 13413 | 72.25% | 9690.90 | 714.19 | 8976.71 | 7.37% | 1.38 | +25.08% |
| 7 | 13132 | 71.59% | 9401.17 | 1392.75 | 8008.42 | 14.81% | 1.40 | +21.34% |
| Total | 91067 | n/a | 54233.82 | 11754.2 | 42479.62 | n/a | n/a | **71.91%** |

---

[5] In Hypothetical Plan A, Mr. Cooper calculated two different Latino CVAP percentages for each district because of a methodological disagreement raised by Dr. Morrison that does not pertain to this motion. (*See* Safarli Decl., Ex. F at 2-14.)

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA  98119-4296
TEL 206 441-4455
FAX 206 441-8484

### *Hypothetical Plan C*

| District | Pop. | % CVAP of pop. | CVAP | Latino CVAP | Non-Latino CVAP | % Latino CVAP of overall CVAP | Ratio of CVAP to pop. | % deviation of CVAP from mean |
|---|---|---|---|---|---|---|---|---|
| 1 | 12384 | 31.25% | 3870.40 | 2234.77 | 1635.63 | 57.74% | 3.20 | -50.04% |
| 2 | 13243 | 47.66% | 6311.90 | 2009.58 | 4302.32 | 31.84% | 2.10 | -18.53% |
| 3 | 12632 | 68.49% | 8651.99 | 2207.27 | 6444.72 | 25.51% | 1.46 | +11.67% |
| 4 | 12940 | 54.93% | 7107.34 | 2139.91 | 4967.43 | 30.11% | 1.82 | -0.08% |
| 5 | 13323 | 69.05% | 9200.11 | 1055.72 | 8144.39 | 11.48% | 1.45 | +18.75% |
| 6 | 13413 | 72.25% | 9690.90 | 714.19 | 8976.71 | 7.37% | 1.38 | +25.08% |
| 7 | 13132 | 71.59% | 9401.17 | 1392.75 | 8008.42 | 14.81% | 1.40 | +21.34% |
| Total | 91067 | n/a | 54233.81 | 11754.19 | 42479.62 | n/a | n/a | **75.12%** |

### *Hypothetical Plan D*

| District | Pop. | % CVAP of pop. | CVAP | Latino CVAP | Non-Latino CVAP | % Latino CVAP of overall CVAP | Ratio of CVAP to pop. | % deviation of CVAP from mean |
|---|---|---|---|---|---|---|---|---|
| 1 | 16622 | 33.41% | 5554.14 | 3068.87 | 2485.27 | 55.25% | 2.99 | -28.31% |
| 2 | 14403 | 48.68% | 7011.25 | 2112.16 | 4899.09 | 30.13% | 2.05 | -9.50% |
| 3 | 11601 | 73.70% | 8549.49 | 1235.31 | 7314.18 | 14.45% | 1.36 | +10.35% |
| 4 | 11783 | 65.58% | 7727.61 | 2192.93 | 5534.68 | 28.38% | 1.52 | -0.25% |
| 5 | 12372 | 62.18% | 7692.76 | 1565.33 | 6127.43 | 20.35% | 1.61 | -0.71% |
| 6 | 11821 | 76.92% | 9092.92 | 535.57 | 8557.35 | 5.89% | 1.30 | +17.36% |
| 7 | 12465 | 69.03% | 8605.63 | 1044.02 | 7561.61 | 12.13% | 1.45 | +11.07% |
| Total | 91067 | n/a | 54233.80 | 11754.19 | 42479.61 | n/a | n/a | **45.67%** |

### *Hypothetical Plan E*

| District | Pop. | % CVAP of pop. | CVAP | Latino CVAP | Non-Latino CVAP | % Latino CVAP of overall CVAP | Ratio of CVAP to pop. | % deviation of CVAP from mean |
|---|---|---|---|---|---|---|---|---|
| 1 | 21265 | 35.63% | 7577.36 | 3876.93 | 3700.43 | 51.16% | 2.81 | -2.20% |
| 2 | 14972 | 50.59% | 7574.01 | 2333.24 | 5240.77 | 30.81% | 1.98 | -2.24% |
| 3 | 10671 | 74.01% | 7897.12 | 1261.12 | 6636 | 15.97% | 1.35 | +1.93% |
| 4 | 11812 | 67.31% | 7951.1 | 1950.66 | 6000.44 | 24.53% | 1.49 | +2.63% |
| 5 | 10718 | 71.51% | 7664.53 | 1114.22 | 6550.31 | 14.54% | 1.40 | -1.07% |
| 6 | 10751 | 73.81% | 7934.83 | 205.6 | 7729.23 | 2.59% | 1.35 | -2.42% |
| 7 | 10878 | 70.19% | 7634.86 | 1012.42 | 6622.44 | 13.26% | 1.42 | -1.46% |
| Total | 91067 | n/a | 54233.81 | 11754.19 | 42479.62 | n/a | n/a | **4.87%** |

DEFENDANTS' STATEMENT OF MATERIAL FACTS - 11

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119·4296
TEL 206 441·4455
FAX 206 441·8484

34.    Although Mr. Cooper's Hypothetical Plan E has very little deviation among the eligible voter populations, the maximum deviation among total population is 81.43% (District 1's deviation from the mean population of 13009.57 is +63.46%, while District 3's deviation is -17.98%). Similarly, Hypothetical Plan D, which roughly equalizes citizens of all ages among the districts, has a maximum total population deviation of 38.56% (District 1's deviation from the mean population of 13009.57 is +27.78% and District 3's deviation is -10.78%).

### F.    Mr. Cooper's Deposition

35.    In his deposition, Mr. Cooper responded to Dr. Morrison's criticism that Mr. Cooper had a "single-minded purpose" of packing Latinos into a single district "to boost Latinos' *share* among whatever *number* of voting-age citizens that district happened to encompass." (Safarli Decl., Ex. E [expert report of Dr. Morrison] at 14 (emphasis in original)). Mr. Cooper denied that he simply "create[d] an LCVAP district and then stop[ped]." (Safarli Decl., Ex. H [deposition transcript of Mr. Cooper] at 126:15-17.)

36.    However, when asked if he attempted to "aggregate the most heavily Latino contiguous areas so [he] could boost the Latino share among whatever number of voting-age citizens that proposed district happened to encompass," Mr. Cooper acknowledged that this aggregation was a "factor" in the creation of his hypothetical plans. (*Id.* at 127:10-24.)

37.    Mr. Cooper then testified that aggregating the Latino share of voting-age citizens could not be considered "at the expense of other traditional

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119-4296
TEL 206 441-4455
FAX 206 441-8484

redistricting concerns," such as "one-person/one-vote" and "compactness." (*Id.* at 128:1-8.)

38.    Mr. Cooper explained that he "looked at other factors," such as "precinct lines," "general compactness," and "one-person/one-vote." (*Id.* at 126:12-15.) Mr. Cooper explained that he considered "one-person/one-vote" by ensuring that "no single district is more than five percent from the ideal population size," (*i.e.*, 1/7th of the City's total population). (*Id.* at 126:18-25.)

39.    However, Mr. Cooper testified that, for Illustrative Plans 1 and 2 and Hypothetical Plans A, B, and C, he simply attempted to equalize the overall population for each district and did not consider the variation among any other figures, such as the number of eligible voters. (*Id.* at 42:6-12; 43:22-44:2.)

40.    For Hypothetical Plans D and E, Mr. Cooper did consider the variation among other figures, namely the number of citizens in each district (Hypothetical Plan D) and the number of eligible voters in each district (Hypothetical Plan E). (Safarli Decl., Ex. F [Supplemental Declaration of William S. Cooper] at 27-32).

41.    In his deposition, however, Mr. Cooper testified that he created Hypothetical Plans D and E exclusively in response to Dr. Morrison's "lengthy discussion about voting power, and the fact that because there are more non-citizens in districts 1 and 2, that the voting power for the rest of the city, residents

DEFENDANTS' STATEMENT OF MATERIAL FACTS - 13

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119·4296
TEL 206 441·4455
FAX 206 441·8484

in other parts of the city, would be diminished."[6] (Safarli Decl., Ex. H at 76:18-77:10; *see also id.* at 130:25-131:7.)

42.    Although Mr. Cooper demonstrated that a majority-minority district could be created using eligible voters as the apportionment basis, he did not testify that he made any effort whatsoever to balance the number of eligible voters in each district (one of the traditional redistricting factors) with other such factors. Indeed, Mr. Cooper testified that "the fact that there may be more citizens in one district than another really cannot be dealt with." (*Id.* at 131:25-132:6.)

43.    Mr. Cooper was then asked specifically about his understanding of "electoral imbalance." (*Id.* at 136:12-13.) Mr. Cooper testified that he understood "electoral imbalance" in this litigation to refer to the fact that "there are a lot of noncitizens in districts 1 and 2, then people in the other parts of the city are not given an opportunity to have their votes count as much as those who are citizens in districts 1 and 2." (*Id.* at 136:20-24.)

44.    Mr. Cooper was asked whether he was concerned about "electoral imbalance" in Illustrative Plans 1 and 2 and Hypothetical Plans A, B, and C. (*Id.*

---

[6] Mr. Cooper also explained his motivation for creating his other plans. According to Mr. Cooper, he produced Illustrative Plans 1 and 2 and Hypothetical Plan A to be "illustrative plans." (Safarli Decl., Ex. H at 126:5-8; *see also* 134:11-12.) He testified that these illustrative plans would be a starting point in the remedy phase. (*Id.* at 136:6-11.) In contrast, he created Hypothetical Plans B and C "solely for the purpose of meeting *Gingles* I." (*Id.* at 126:8-9.)

DEFENDANTS' STATEMENT OF MATERIAL FACTS - 14

1    at 137:19-21.) Mr. Cooper responded that he "didn't look at that question

2    carefully." (*Id.* at 137:22.)

3    **G.    Dr. Morrison's Deposition**

4    45.    Dr. Morrison—who attended Mr. Cooper's deposition—testified that

5    Yakima was

> an exemplary case of the . . . dilemma that arises because of the
> tension within the law. That we're obliged to draw districts based on
> total population but when one gives predominant emphasis to race or
> ethnicity, what can happen . . . in certain local demographic settings,
> is that you end up with an effort to concentrate Latinos in a district in
> order to make them a majority of that district and empower them to
> elect candidates of their choice, while at the same time you are
> disenfranchising people in other districts who are not only
> nonHispanic Whites but may well be other racial minorities or in fact
> many other Hispanics who happen to be citizens living in another part
> of [t]own. And it creates a tension within the law because originally
> drawing districts based on total population would closely approximate
> equipopolous districts in terms of persons who were entitled to vote.
> But because of the demography that has come about in this country in
> Latino communities you get this paradox that has only come to the
> attention of demographers . . . in the last ten years. And it's not
> something that one encounters when dealing with the issue of African
> American versus nonAfrican American populations.

(Safarli Decl., Ex. I at 24:22-25:23.)

46.    Dr. Morrison was then asked whether parties are "obligated to use

total population as the apportionment basis" in redistricting plans. (*Id.* at 52:10-

11.) Dr. Morrison responded that he believed "the law says one does," but

explained that some deviation in population size among the districts was

permitted in order to "balanc[e] a number of redistricting criteria," such as

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119-4296
TEL 206 441-4455
FAX 206 441-8484

1    "communit[ies] of interest," "avoid[ing] splitting a precinct," or "avoid[ing] an

2    extreme degree of electoral imbalance." (*Id.* at 52:12-53:24.)

3        47.    Dr. Morrison testified that Mr. Cooper did not "seem to be able to

4    conceptualize the factors that need to be balanced when you talk about balancing

5    traditional redistricting criteria." (*Id.* at 55:12-18.) Dr. Morrison continued:

> [Mr. Cooper] seems to be totally unaware of what was
> happening with the damage that was being done to the weighting of
> votes across the city by configuring District 1 in that way.
>     [. . .] I certainly haven't read in his report and didn't hear in the
> deposition yesterday any specific way in which he accounted for the
> various traditional redistricting criteria. . . . I didn't hear him respond
> specifically how he had taken account, for example, of the differential
> weighting of votes. That is to say I would have liked to have heard
> him say [']I noticed that there was a severe imbalance and, therefore, I
> took this step to try to moderate the imbalance. So while it still existed
> . . . I had reduced its severity as one step in trying to balance
> redistricting criteria.[']

(*Id.* at 55:18-56:10.)

    48.    Dr. Morrison testified that he believed Mr. Cooper had not created a

plan "that balances these criteria where one can look at it and say yes, it's a

reasonable compromise for someone who has to take all these things into

consideration." (*Id.* at 56:22-25.)

    49.    Dr. Morrison further testified that he did not believe Mr. Cooper

"had even thought about the problem of the severe overweighting and

underweighting of votes depending on which district an elector happens to reside

in." (*Id.* at 57:2-6.) Dr. Morrison stated that "at a minimum," Mr. Cooper

"subordinated" the traditional redistricting criteria of "electoral imbalance" to

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119-4296
TEL 206·441·4455
FAX 206·441·8484

1    "[r]ace or ethnicity," and that race or ethnicity was "the predominant factor in

2    drawing District 1 in all of these plans." (*Id.* at 57:13-20; 58:14-16.)

3        50.    Later in his deposition, Dr. Morrison was asked whether his

4    "position" was that the "eligible voters in District 1 may be more heavily

5    weighted than those in the surrounding district." (*Id.* at 159:1-3.) Dr. Morrison

6    agreed. (*Id.* at 159:4.)

7        51.    He was then asked whether this "issue go[es] to whether or not

8    plaintiffs can satisfy *Gingles* 1." (*Id.* at 159:5-6.) Dr. Morrison explained that the

9    issue does raise doubts "about a plan being able to satisfy *Gingles* 1 when there is

10   such a severe malapportionment of eligible voters." (*Id.* at 159:18-23.)

11       52.    Dr. Morrison testified that the concern about the malapportionment

12   of eligible voters does not mean that a Section 2 plaintiff should not attempt to

13   create a majority-minority district under the first *Gingles* factor. (*Id.* at 164:1-3).

14   Instead, the concern is "a matter of recognizing the traditional redistricting

15   criteria, all of them, and trying to achieve some reasonable balance among them.

16   And it requires on the part of the person doing it first all recognizing them all,

17   which . . . Mr. Cooper has overlooked several and . . . seems not to understand

18   what they are, and secondly, achieving some balance among them in a way that

19   one can articulate what the balance is and what the rationale was. And again that

20   is another step where I haven't seen any evidence that that occurred in what Mr.

21   Cooper did." (*Id.* at 167:5-15.)

22       53.    Dr. Morrison was also asked if there was a "tipping point" for a

23   magnitude of electoral imbalance that would make it "unacceptable." (*Id.* at

24   166:10-12.) Dr. Morrison responded that he "d[idn't] envision it as a tipping

25

Floyd, Pflueger & Ringer P.S.
200 West Thomas Street, Suite 500
Seattle, WA 98119-4296
Tel 206 441-4455
Fax 206 441-8484

1  point." (*Id.* at 166:13-14.) Instead, he "envision[ed] it as . . . how avoidable is the

2  magnitude. That is to say however big it could be, how far away from that

3  maximum are you or however big is it, can you make it smaller while respecting

4  other traditional redistricting considerations." (*Id.* at 166:13-18.)

5      54.    Dr. Morrison was then asked what his "proposed solution" would be

6  to address the concern about Mr. Cooper's disregard for electoral imbalance. (*Id.*

7  at 169:13-16.) Dr. Morrison responded: "My proposed solution would be to try to

8  adjust the boundaries of District 1 and I guess to some extent District 2 in a way

9  that would accord with [Mr. Cooper's] desire to concentrate Latinos in a district

10  but that would have the effect of perhaps reducing the degree of imbalance

11  somewhat." (*Id.* at 169:17-21.)

12      55.    Dr. Morrison was then asked about the paragraph in his report stating

13  that "eligible voters who would be most severely disadvantaged include the

14  majority of the City's American Indian, Asian, and African American eligible

15  voters." (*Id.* at 170:14-171:2; Safarli Decl., Ex. E [report of Dr. Morrison] at 16.)

16  Dr. Morrison explained that he did not present data in his report to support this

17  conclusion, but he had "analyzed the data" and "it's obvious that that would be

18  the effect."[7] (*Id.* at 171:3-9.) Dr. Morrison testified that he would likely have an

19

20  _____

21  [7] The data for this issue are contained in the publicly-available U.S. Census

22  Bureau's 2007-2011 American Community Survey 5-Year Estimate ("5-Year

23  Estimate"), which was relied on by both Mr. Cooper and Dr. Morrison. The 5-

24  Year Estimate shows the voting-age citizen population of American Indians,

25  Asians, and African Americans within each census block group that is wholly or

DEFENDANTS' STATEMENT OF MATERIAL FACTS - 18

exhibit at trial demonstrating the disadvantage to minorities caused by Mr. Cooper's plan. (*Id.* at 171:8-9).

56.    Lastly, Dr. Morrison was asked how he knew whether Mr. Cooper "gave predominant emphasis or maybe even exclusive emphasis to . . . Latino ethnicity." (*Id.* at 180:17-19.) Dr. Morrison responded that "[c]ertainly there is every indication that he gave predominant emphasis in the sense that I don't see any evidence of any other factor that was given equal importance." (*Id.* at 181:18-21; 182:1-5.)

### H.    Mr. Cooper's Third Expert Report

57.    On April 25, 2014, Plaintiffs produced a third report from Mr. Cooper, which incorporated more recent citizenship and voter registration statistics for Illustrative Plans 1 and 2 and Hypothetical Plans A, B and C. (Safarli Decl., Ex. J [Second Supplemental Declaration of William Cooper] at 1-5.)

58.    Plaintiffs' counsel provided additional data for various figures in the districts created by Mr. Cooper. (Safarli Decl., Ex. K [email of Plaintiffs' counsel Ben Stafford dated May 2, 2014 and attachment]).

59.    Cooper did not provide updated information for Hypothetical Plans D and E. *Id.* at 4 n.6.

---

partly within the hypothetical districts created by Mr. Cooper in each of his redistricting plans. (Safarli Decl., Ex. F.) Tabulating these data would reveal that a majority of voting-age American Indians and Asians reside outside of Districts 1 and 2 from Mr. Cooper's hypothetical plans.

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119·4296
TEL 206 441·4455
FAX 206 441·8484

## Illustrative Plan 1 (updated)

| District | Pop. | % CVAP of pop. | CVAP | Latino CVAP | Non-Latino CVAP | % Latino CVAP of overall CVAP | Ratio of CVAP to pop. | % deviation of CVAP from mean |
|---|---|---|---|---|---|---|---|---|
| 1 | 12533 | 38.43% | 4815.95 | 2625.14 | 2190.80 | 54.51% | 2.60 | -38.75% |
| 2 | 13358 | 40.51% | 5411.56 | 2506.26 | 2905.30 | 46.31% | 2.47 | -31.18% |
| 3 | 12859 | 68.30% | 8792.25 | 2180.90 | 6611.36 | 24.80% | 1.46 | +11.81% |
| 4 | 13175 | 58.99% | 7772.07 | 2074.60 | 5697.47 | 26.69% | 1.70 | -1.16% |
| 5 | 12683 | 69.15% | 8769.88 | 1071.01 | 7698.88 | 12.21% | 1.45 | +11.52% |
| 6 | 13176 | 73.12% | 9634.26 | 685.23 | 8949.03 | 7.11% | 1.37 | +22.52% |
| 7 | 13283 | 74.14% | 9847.40 | 1491.29 | 8356.11 | 15.14% | 1.35 | +25.23% |
| Total | 91067 | n/a | 55043.37 | 12634.43 | 42408.95 | n/a | n/a | **63.98%** |

## Illustrative Plan 2 (updated)

| District | Pop. | % CVAP of pop. | CVAP | Latino CVAP | Non-Latino CVAP | % Latino CVAP of overall CVAP | Ratio of CVAP to pop. | % deviation of CVAP from mean |
|---|---|---|---|---|---|---|---|---|
| 1 | 12969 | 38.66% | 5013.86 | 2742.57 | 2271.29 | 54.70% | 2.59 | -36.24% |
| 2 | 12822 | 41.03% | 5260.51 | 2397.52 | 2862.99 | 45.58% | 2.44 | -33.10% |
| 3 | 13079 | 68.05% | 8900.04 | 2205.47 | 6694.57 | 24.79% | 1.47 | +13.18% |
| 4 | 13431 | 58.59% | 7869.02 | 2109.44 | 5759.58 | 26.81% | 1.71 | +0.01% |
| 5 | 12761 | 69.26% | 8837.92 | 1018.78 | 7819.15 | 11.53% | 1.44 | +12.40% |
| 6 | 12722 | 73.22% | 9314.62 | 669.36 | 8645.26 | 7.19% | 1.37 | +18.46% |
| 7 | 13283 | 74.14% | 9847.40 | 1491.29 | 8356.11 | 15.14% | 1.35 | +25.23% |
| Total | 91067 | n/a | 55043.37 | 12634.43 | 42408.95 | n/a | n/a | **61.47%** |

## Hypothetical Plan A (updated)

| District | Pop. | % CVAP of pop. | CVAP | Latino CVAP | Non-Latino CVAP | % Latino CVAP of overall CVAP | Ratio of CVAP to pop. | % deviation of CVAP from mean |
|---|---|---|---|---|---|---|---|---|
| 1 | 12819 | 39.20% | 5025.58 | 2790.59 | 2235.00 | 55.53% | 2.55 | -36.09% |
| 2 | 12421 | 39.42% | 4896.81 | 2314.16 | 2582.64 | 47.26% | 2.54 | -37.73% |
| 3 | 13026 | 68.48% | 8920.28 | 2212.74 | 6707.54 | 24.81% | 1.46 | +13.44% |
| 4 | 12676 | 59.63% | 7559.12 | 1896.08 | 5663.04 | 25.08% | 1.68 | -3.87% |
| 5 | 13666 | 67.02% | 9159.93 | 1244.34 | 7915.59 | 13.58% | 1.49 | +16.49% |
| 6 | 13176 | 73.12% | 9634.26 | 685.23 | 8949.03 | 7.11% | 1.37 | +22.52% |
| 7 | 13283 | 74.14% | 9847.40 | 1491.29 | 8356.11 | 15.14% | 1.35 | +25.23% |
| Total | 91067 | n/a | 55043.38 | 12634.43 | 42408.95 | n/a | n/a | **62.96%** |

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119·4296
TEL 206 441·4455
FAX 206 441·8484

## Hypothetical Plan B (updated)

| District | Pop. | % CVAP of pop. | CVAP | Latino CVAP | Non-Latino CVAP | % Latino CVAP of overall CVAP | Ratio of CVAP to pop. | % deviation of CVAP from mean |
|---|---|---|---|---|---|---|---|---|
| 1 | 12995 | 34.17% | 4439.74 | 2632.75 | 1806.99 | 59.30% | 2.93 | -43.54% |
| 2 | 12706 | 48.01% | 6099.86 | 2111.74 | 3988.12 | 34.62% | 2.08 | -22.42% |
| 3 | 12632 | 65.99% | 8336.09 | 2230.27 | 6105.82 | 26.75% | 1.52 | +6.01% |
| 4 | 12866 | 59.19% | 7615.99 | 2369.45 | 5246.54 | 31.11% | 1.69 | -3.15% |
| 5 | 13323 | 67.84% | 9038.34 | 1063.85 | 7974.50 | 11.77% | 1.47 | +14.94% |
| 6 | 13413 | 72.80% | 9764.91 | 703.33 | 9061.58 | 7.20% | 1.37 | +24.18% |
| 7 | 13132 | 74.23% | 9748.45 | 1523.05 | 8225.40 | 15.62% | 1.35 | +23.97% |
| Total | 91067 | n/a | 55043.38 | 12634.44 | 42408.95 | n/a | n/a | **67.72%** |

## Hypothetical Plan C (updated)

| District | Pop. | % CVAP of pop. | CVAP | Latino CVAP | Non-Latino CVAP | % Latino CVAP of overall CVAP | Ratio of CVAP to pop. | % deviation of CVAP from mean |
|---|---|---|---|---|---|---|---|---|
| 1 | 12384 | 33.93% | 4202.31 | 2559.62 | 1642.69 | 60.91% | 2.95 | -46.55% |
| 2 | 13243 | 47.26% | 6307.26 | 2175.80 | 4131.45 | 34.50% | 2.10 | -19.79% |
| 3 | 12632 | 65.99% | 8336.09 | 2230.27 | 6105.82 | 26.75% | 1.52 | +6.01% |
| 4 | 12940 | 59.09% | 7646.02 | 2378.51 | 5267.51 | 31.11% | 1.69 | -2..76 |
| 5 | 13323 | 67.84% | 9038.34 | 1063.85 | 7974.50 | 11.77% | 1.47 | +14.94% |
| 6 | 13413 | 72.80% | 9764.91 | 703.33 | 9061.58 | 7.20% | 1.37 | +24.17% |
| 7 | 13132 | 74.23% | 9748.45 | 1523.05 | 8225.40 | 15.62% | 1.35 | +23.97% |
| Total | 91067 | n/a | 55043.38 | 12634.43 | 42408.95 | n/a | n/a | **70.72%** |

//

//

//

//

//

//

//

//

//

DEFENDANTS' STATEMENT OF MATERIAL FACTS - 21

Floyd, Pflueger & Ringer P.S.
200 West Thomas Street, Suite 500
Seattle, WA 98119-4296
Tel 206 441-4455
Fax 206 441-8484

1

2      RESPECTFULLY SUBMITTED this 1st day of July, 2014.

3                    s/ John A. Safarli

4                    Francis S. Floyd, WSBA No. 10642

5                    ffloyd@floyd-ringer.com

                      John A. Safarli, WSBA No. 44056

6                    jsafarli@floyd-ringer.com

7                    Floyd, Pflueger & Ringer, P.S.

                      200 W. Thomas Street, Suite 500

8                    Seattle, WA  98119-4296

9                    Tel (206) 441-4455

                      Fax (206) 441-8484

                      *Attorneys for Defendants*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119·4296
TEL 206 441·4455
FAX 206 441·8484

# CERTIFICATE OF SERVICE

The undersigned hereby certifies under penalty of perjury under the laws of the State of Washington, that on the date noted below, a true and correct copy of the foregoing was delivered and/or transmitted in the manner(s) noted below:

| | | |
|---|---|---|
| Sarah Dunne<br>La Rond Baker<br>ACLU OF WASHINGTON<br>    FOUNDATION<br>901 Fifth Avenue, Suite 630<br>Seattle, WA 98164<br>(206) 624-2184<br>dunne@aclu-wa.org<br>lbaker@aclu-wa.org | *Counsel for<br>Plaintiffs* | ☐ VIA EMAIL<br>☐ VIA FACSIMILE<br>☐ VIA MESSENGER<br>☐ VIA U.S. MAIL<br>☒ VIA CM/ECF<br>SYSTEM |
| Joaquin Avila<br>THE LAW FIRM OF JOAQUIN<br>    AVILA<br>P.O. Box 33687<br>Seattle, WA 98133<br>(206) 724-3731<br>jgavotingrights@gmail.com | *Counsel for<br>Plaintiff Rogelio<br>Montes*<br><br>*Pro Hac Vice* | ☐ VIA EMAIL<br>☐ VIA FACSIMILE<br>☐ VIA MESSENGER<br>☐ VIA U.S. MAIL<br>☒ VIA CM/ECF<br>SYSTEM |
| Laughlin McDonald<br>ACLU FOUNDATION, INC.<br>    VOTING RIGHTS PROJECT<br>230 Peachtree Street, Suite 1440<br>Atlanta, GA 30303-1227<br>(404) 523-2721<br>lmcdonald@aclu.org | *Counsel for<br>Plaintiff Mateo<br>Arteaga*<br><br>*Pro Hac Vice* | ☐ VIA EMAIL<br>☐ VIA FACSIMILE<br>☐ VIA MESSENGER<br>☐ VIA U.S. MAIL<br>☒ VIA CM/ECF<br>SYSTEM |

FLOYD, PFLUEGER & RINGER P.S.<br>200 WEST THOMAS STREET, SUITE 500<br>SEATTLE, WA 98119·4296<br>TEL 206 441·4455<br>FAX 206 441·8484

1

2    Kevin J. Hamilton            *Counsel for*          ☐ VIA EMAIL
     William B. (Ben) Stafford    *Plaintiffs*           ☐ VIA FACSIMILE
3    Abha Khanna                                         ☐ VIA MESSENGER
     PERKINS COIE LLP                                    ☐ VIA U.S. MAIL
4    1201 Third Avenue, Suite 4900                       ☒ VIA CM/ECF
5    Seattle, WA 98101-3099                              SYSTEM
     (206) 359-8000
6    khamilton@perkinscoie.com
7    wstafford@perkinscoie.com
     akhanna@perkinscoie.com
8

9        DATED this 1st day of July, 2014
10

11

12                       s/ John A. Safarli
                         John A. Safarli, WSBA No. 44056
13

14

15

16

17

18

19

20

21

22

23

24

25

DEFENDANTS' STATEMENT OF MATERIAL FACTS

FLOYD, PFLUEGER & RINGER P.S.
200 WEST THOMAS STREET, SUITE 500
SEATTLE, WA 98119·4296
TEL 206 441·4455
FAX 206 441·8484