HONORABLE THOMAS O. RICE

Sarah A. Dunne, WSBA No. 34869
La Rond Baker, WSBA No. 43610
AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
Telephone: (206) 624-2184
Email: Dunne@aclu-wa.org
        LBaker@aclu-wa.org

Kevin J. Hamilton, WSBA No.15648
Abha Khanna, WSBA No. 42612
William Stafford, WSBA No. 39849
Perkins Coie LLP
1201 Third Avenue, Ste. 4900
Seattle, WA  98101-3099
Telephone: (206) 359-8000
Email: KHamilton@perkinscoie.com
        AKhanna@perkinscoie.com
        WStafford@perkinscoie.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROGELIO MONTES and MATEO ARTEAGA,<br><br>                Plaintiffs,<br><br>        v.<br><br>CITY OF YAKIMA, MICAH CAWLEY, in his official capacity as Mayor of Yakima, and MAUREEN ADKISON, SARA BRISTOL, KATHY COFFEY, RICK ENSEY, DAVE ETTL, and BILL LOVER, in their official capacity as members of the Yakima City Council,<br><br>                Defendants. | NO. 12-CV-3108 TOR<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>NOTED FOR HEARING: August 18, 2014<br><br>Telephonic Argument<br>August 18, 2014 - 9:00 a.m.<br>Call in number:  (888) 273-3658<br>Access Code: 2982935<br>Security Code:  3018 |

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
68142-0004/LEGAL122850372.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................1

II.  ARGUMENT .......................................................................................1

    A.   Summary Judgment Is Appropriate for This Section 2 Case ........1

    B.   There Is No Genuine Issue of Material Fact Precluding
        Summary Judgment in Favor of Plaintiffs on the Gingles
        Preconditions.................................................................................2

        1.   No Genuine Issue of Material Fact as to Gingles 1 .............2

        2.   No Genuine Issue of Material Fact as to Gingles 2.............5

        3.   No Genuine Issue of Material Fact as to Gingles 3...........10

    C.   Plaintiffs Have Established a Section 2 Violation Based on
        the Totality of the Circumstances ..............................................13

        1.   Success of Minority Candidates (Senate Factor 7)...........14

        2.   Racially Polarized Voting (Senate Factor 2) ....................16

        3.   History of Official Voting Discrimination (Senate
            Factor 1)............................................................................16

        4.   Enhancing Factors (Senate Factor 3).................................17

        5.   Effects of Past Discrimination (Senate Factor 5) .............18

        6.   Racial Appeals in Campaigns (Senate Factor 6) ...............19

        7.   Additional Factors..............................................................19

III. CONCLUSION ..................................................................................20

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47

# TABLE OF AUTHORITIES

## CASES

*Askew v. City of Rome*,
    127 F.3d 1355 (11th Cir. 1997) ...................................................................17

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ......................................................................................13

*Estate of Tucker v. Interscope Records, Inc.*,
    515 F.3d 1019 (9th Cir. 2008) ......................................................................13

*Fabela v. City of Farmers Branch, Tex.*,
    2012 WL 3135545 (N.D. Tex. Aug. 2, 2012) ...............................2, 9, 11, 14

*Ga. State Conference of NAACP v. Fayette Cnty. Bd. of Commr's*,
    950 F. Supp. 2d 1294 (N.D. Ga. 2013)........................................1, 12, 14, 20

*Garza v. Cnty. of L.A.*,
    918 F.2d 763 (9th Cir. 1990) .........................................................................3

*Gomez v. City of Watsonville*,
    863 F.2d 1407 (9th Cir. 1988) ....................................... 3, 7, 8, 12, 15, 18, 20

*Harper v. City of Chi. Heights*,
    824 F. Supp. 786 (N.D. Ill. 1993)..................................................................1

*Jadwin v. Cnty. of Kern*,
    610 F. Supp. 2d 1129 (E.D. Cal. 2009) .........................................................4

*Johnson v. Halifax Cnty.*,
    594 F. Supp. 161 (E.D.N.C. 1984) ..............................................................14

*LULAC, Council No. 4434 v. Clements*,
    999 F.2d 831 (5th Cir. 1993) ........................................................................18

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT – ii
68142-0004/LEGAL122850372.4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47

**TABLE OF AUTHORITIES**
**(continued)**

*Martin v. Allain,*
    658 F. Supp. 1183 (S.D. Miss. 1987) ........................................................17

*Marylanders for Fair Representation, Inc. v. Schaefer,*
    849 F. Supp. 1022 (D. Md. 1994)...............................................................1

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ....................................................................................5

*McMillan v. Escambia Cnty., Fla.,*
    748 F.2d 1037 (5th Cir. 1984) ................................................................20

*McNeil v. Springfield, Ill.,*
    658 F. Supp. 1015 (C.D. Ill. 1987) .........................................................19

*Mexican-Am. Fed'n-Wash. State v. Naff,*
    299 F. Supp. 587 (E.D. Wash. 1969).......................................................16

*Old Person v. Cooney,*
    230 F.3d 1113 (9th Cir. 2000) ................................................................13

*Pope v. Cnty. of Albany,*
    2014 WL 316703 (N.D.N.Y. Jan. 28, 2014) .............................................1

*Ruiz v. City of Santa Maria,*
    160 F.3d 543 (9th Cir. 1998) ....................................................................6

*Sanchez v. Colo.,*
    97 F.3d 1303 (10th Cir. 1996) ..........................................................14, 15

*Solomon v. Liberty Cnty., Fla.,*
    899 F.2d 1012 (11th Cir. 1990) ................................................................2

*Thornburg v. Gingles,*
    478 U.S. 30 (1986) .. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 19

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT – iii
68142-0004/LEGAL122850372.4

**TABLE OF AUTHORITIES**
**(continued)**

*U.S. v. Blaine Cnty.*,
363 F.3d 897 (9th Cir. 2004) ...........................................................................8

*U.S. v. Charleston Cnty.*,
318 F. Supp. 2d 302 (D.S.C. 2002) .................................................................1

*U.S. v. Marengo Cnty. Comm'n*,
731 F.2d 1546 (11th Cir. 1984) ....................................................................20

*U.S. v. Vill. of Port Chester*,
704 F. Supp. 2d 411 (S.D.N.Y. 2010) .....................................................2, 20

OTHER AUTHORITIES

S. Rep. No. 97-417.............................................................................15, 18, 19, 20

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# I.    INTRODUCTION

Defendants' response to Plaintiffs' summary judgment motion reveals no issues of material fact, but only a fundamental misunderstanding and misapplication of Voting Rights Act ("VRA") law. While Defendants assure the Court they have evidence to present at trial, they cite virtually none of it. The hopeful promise of evidence to come is insufficient to defeat summary judgment. The Court should grant summary judgment in favor of Plaintiffs.

# II.    ARGUMENT

## A.    Summary Judgment Is Appropriate for This Section 2 Case

Defendants assert that "Section 2 claims are not amenable to summary judgment." ECF No. 77 ("Response Br.") at 7. To the contrary, courts can and do grant summary judgment in favor of Section 2 plaintiffs. *See, e.g.*, *Pope v. Cnty. of Albany*, 2014 WL 316703 (N.D.N.Y. Jan. 28, 2014) (granting summary judgment on *Gingles* 1); *Ga. State Conference of NAACP v. Fayette Cnty. Bd. of Commr's*, 950 F. Supp. 2d 1294 (N.D. Ga. 2013) (same, as to *Gingles* factors and totality of circumstances); *U.S. v. Charleston Cnty.*, 318 F. Supp. 2d 302 (D.S.C. 2002) (same, on all three *Gingles* factors); *Marylanders for Fair Representation, Inc. v. Schaefer*, 849 F. Supp. 1022 (D. Md. 1994) (same, as to *Gingles* factors and totality of circumstances); *Harper v. City of Chi. Heights*, 824 F. Supp. 786 (N.D. Ill. 1993) (same, as to *Gingles* factors). The fact that some Section 2 claims present material fact disputes hardly means all do. Nor does the complexity of the VRA exonerate Defendants of their burden to present conflicting evidence to create questions of fact. Here, the undisputed facts warrant summary judgment in favor of Plaintiffs.

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT – 1
68142-0004/LEGAL122850372.4

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**B.    There Is No Genuine Issue of Material Fact Precluding Summary Judgment in Favor of Plaintiffs on the *Gingles* Preconditions**

**1.    No Genuine Issue of Material Fact as to *Gingles* 1**

Defendants maintain that a failure to balance "electoral equality" in drawing demonstrative plans dooms Plaintiffs' Section 2 claim.  Response Br. at 9-15.  This is a rehash of the same arguments Defendants advance in their own summary judgment motion, and it fares no better here.  Because Defendants have identified no material fact dispute aside from the fictional "electoral equality" criterion, summary judgment in favor of Plaintiffs on the first *Gingles* precondition is appropriate.

Plaintiffs have established all of the facts necessary for a finding that *Gingles* 1 has been satisfied—and Defendants do not dispute any of them.  *See* ECF No. 83 at 3-4.  Specifically, it is undisputed that: (1) Plaintiffs' expert has created several demonstrative plans containing at least one district in which Latinos comprise a majority of eligible voters, *see* ECF No. 65 ("Pls.' SUMF") ¶¶ 37, 48, 59, 70, 79, 98-100, 103; *see also Fabela v. City of Farmers Branch, Tex.*, 2012 WL 3135545, at *6 (N.D. Tex. Aug. 2, 2012) ("[P]laintiffs have proved that they can draw a demonstration district that contains greater than 50% Hispanic CVAP and have therefore satisfied the first prong of *Gingles*."); and (2) the Latino population is geographically compact, as shown by:

a.  its concentration in East Yakima; *see* Pls.' SUMF ¶¶ 27-28, 105; *Solomon v. Liberty Cnty., Fla.*, 899 F.2d 1012, 1018 (11th Cir. 1990) (*Gingles* 1 satisfied where "the undisputed demographic evidence indicates that the black population is concentrated in the northwest region of Liberty County");

b.  the visual and quantitative compactness of the demonstrative districts; *see* Pls.' SUMF ¶¶ 40-42, 51-53, 62-64, 72-73, 81-82, 106; *U.S. v. Vill.*

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT – 2
68142-0004/LEGAL122850372.4

*of Port Chester*, 704 F. Supp. 2d 411, 439 (S.D.N.Y. 2010) (*Gingles* 1 satisfied where "the size and shape of the illustrative districts . . . comport with traditional districting principles of population equality and compactness"); and

c. the demonstrative plans' adherence to the traditional districting principles of population equality, contiguity, respect for existing geographic and political boundaries, and incumbent protection; *see* Pls.' SUMF ¶¶ 50, 54-57, 61, 65-68, 71, 74-77, 80, 83-86.

Defendants' only way around the unavoidable conclusion that Plaintiffs have met the existing *Gingles* 1 standard is to concoct a new standard. Specifically, they contend that Section 2 plaintiffs must consider "electoral equality" in drawing demonstrative plans. Response Br. at 12. But as shown in Plaintiffs' response to Defendants' summary judgment motion, *see* ECF No. 78 ("Pls.' Response"), which they incorporate by reference, Defendants' reliance on "electoral equality" finds no support in the case law—and has been rejected by the Ninth Circuit. Plaintiffs will not repeat their Response here, but suffice it to say, it is only by Defendants' unilateral decree—and not by any case law so holding—that Plaintiffs' "must" weigh the number of voters among demonstrative districts. In fact, the Ninth Circuit has held that "districting on the basis of voting capability . . . would constitute a denial of equal protection." *Garza v. Cnty. of L.A.*, 918 F.2d 763, 776 (9th Cir. 1990).

Defendants double down on the ill-conceived legal arguments advanced in their summary judgment motion. They assert that Plaintiffs' demonstrative plans would themselves create a "sure violation" of Section 2 for minority voters "who live outside the majority-minority districts." Response Br. at 13. In so arguing, however, Defendants ignore Ninth Circuit case law foreclosing the claim, *Gomez v. City of Watsonville*, 863 F.2d 1407, 1414 (9th Cir. 1988),

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT – 3
68142-0004/LEGAL122850372.4

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

basic tenets of the VRA, *Thornburg v. Gingles*, 478 U.S. 30, 50 (1986) (requiring "sufficiently large" minority population to establish Section 2 claim), and the irony of their attempt at "protecting" minority voting rights; to be sure, minority voters could suffer no greater dilution of voting strength than they do under the current at-large election system. *See* Pls.' Response at 10-14.

Defendants contend that failure to consider "electoral equality" constitutes an unconstitutional gerrymander that forecloses Plaintiffs' Section 2 claim. Response Br. at 14. Never mind that electoral equality is not a traditional districting principle, that no court has ever invalidated a plan due to failure to balance electoral equality, and Defendants' misapplication of the legal standard for a gerrymandering claim. *See* Pls.' Response at 14-17. The suggestion that Plaintiffs' Section 2 claim fails as an unconstitutional gerrymander because "there has been no [Section 2] violation established in this case" to justify the alleged gerrymander, Response Br. at 14, would ensnare Plaintiffs in a Catch-22 and put an effective end to all Section 2 claims.

In short, both case law and common sense flatly contradict Defendants' notion that "electoral equality" precludes a finding that Plaintiffs have established *Gingles* 1.

Defendants suggest that even if the Court rejects their legal arguments on the first *Gingles* precondition, "Mr. Cooper's neglect of electoral equality raises genuine issues of material fact that preclude summary judgment" in favor of Plaintiffs. Response Br. at 14. But because their alleged factual dispute hinges, once again, on the legally deficient notion of "electoral equality," it is neither "genuine" nor "material." *See Jadwin v. Cnty. of Kern*,

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT – 4
68142-0004/LEGAL122850372.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

610 F. Supp. 2d 1129, 1193 (E.D. Cal. 2009) ("[C]onclusory statements of law are insufficient to create a genuine dispute.").[1]

In sum, the undisputed facts compel the conclusion that Plaintiffs have satisfied the first *Gingles* precondition.  Accordingly, the Court should, at the very least, grant summary judgment in favor of Plaintiffs on this issue.

### 2.    No Genuine Issue of Material Fact as to *Gingles* 2

The second *Gingles* precondition requires that the minority group be "politically cohesive."  478 U.S. at 51.  As set forth in Plaintiffs' Motion, ECF No. 64 ("Pls.' Mot.") at 21-24, the experts evaluated ten recent elections in which voters in Yakima were presented with a choice of a Latino candidate or Latino-backed initiative.  In nine of those elections, a majority of Latinos voted for the Latino candidate (and Proposition 1), as determined by the most reliable

_____

[1] Even if "electoral equality" had any bearing, Defendants' assertion that "there is reason to doubt the mathematical possibility of creating a districting plan" that avoids a "gross devaluation of votes," Response Br. at 14, fails to cite a single, specific fact in support.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts").  Defendants further suggest this issue hinges on "the competing opinions of the experts," Response Br. at 14, but there is no factual dispute between the experts regarding the number of voters in each demonstrative district, only a legal dispute regarding the relevance of "electoral equality," *see* ECF No. 68 ¶ 27 (legal questions regarding "electoral equality" posed by Dr. Morrison).

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT – 5
68142-0004/LEGAL122850372.4

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

statistical method.  *See id.*; *see also Ruiz v. City of Santa Maria*, 160 F.3d 543, 552 (9th Cir. 1998) ("[A] candidate who receives sufficient votes to be elected if the election were held only among the minority group in question qualifies as minority-preferred.").  Defendants dispute none of this.

Defendants instead note that the "experts flatly disagree on whether voter cohesion has been established in this case."  Response Br. at 15.  The basis of that disagreement, however, is not the facts (i.e., the estimates of voting behavior), but rather their legal significance (i.e., whether Plaintiffs have shown minority cohesion).  *See* ECF No. 79-2, Ex. K ("Alford Dep.") at 104:6-12, 134:23-135:10.  Where, as here, the experts disagree only on whether the level of cohesion expressed in the data satisfies *Gingles*, there is no dispute of material *fact* that would preclude summary judgment.

Defendants next point to the confidence intervals around Dr. Engstrom's point estimates of Latino voting behavior as "suggest[ing] the absence of Latino voter cohesion."  Response Br. at 15.  Defendants' expert Dr. Alford readily admits that the point estimate is the "best estimate," and that the "best estimates" available indicate that the level of Latino cohesion for Latino candidates exceeds 50% in nine out of ten of the elections analyzed.  Pls.' SUMF ¶ 111; Alford Dep. at 116:21-25 ("We can say what our best estimate is. . . . [B]ased on these estimates, the estimates show that the candidate of choice is . . . [i]n Place 5, Rodriguez, in a Place 7, Soria."); *id.* at 119:20-22 (Justice Gonzalez is the Latino candidate of choice based on "our best estimate" "in the mid 60 percent range").  Dr. Alford posits, however, that given the lower level of Latino voter turnout that in turn generates broader

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT – 6
68142-0004/LEGAL122850372.4

confidence intervals, we cannot know "for sure" that these Latino candidates "were the candidate[s] of choice" in the primaries.[2]  *Id.* at 116:14-15; *see also id.* at 116:15-17 ("[W]e don't have anything that tells us for sure because we don't have any homogeneous precinct analysis."); ECF No. 79-3, Ex. M ¶ 29 (Dr. Engstrom explaining that broader confidence intervals around point estimates for Latino voters "is to be expected given the differences in the relative presence of Latinos and non-Latinos across precincts in Yakima").[3] According to Defendants, because the data on voting behavior of Latinos is not as robust as it is for non-Latinos, Plaintiffs simply cannot satisfy the second *Gingles* precondition.  In other words, this argument is premised on the notion that low turnout effectively strips minority voters of a remedy under Section 2.

But the Ninth Circuit has specifically rejected the contention that Section 2 plaintiffs should somehow be penalized for low voter turnout.  In *Gomez*, the Ninth Circuit held that the district court "erred by focusing on low minority voter registration and turnout as evidence that the minority community was not politically cohesive."  863 F.2d at 1416.  The Court reasoned that if low turnout could negate satisfaction of *Gingles* 2, minority voters would

---

[2] Defendants do not dispute that in the four decisive elections, Latino cohesion was overwhelming, with point estimates ranging from 70.1% to 98.2% and confidence intervals well above 50%.  *See* Pls.' SUMF ¶¶ 121, 130, 139, 158.

[3] Dr. Alford's suggestion, meanwhile, that the Court must determine the level of Latino cohesion "for sure," Alford Dep. at 116:14, is inapposite with the preponderance of the evidence standard applicable in this civil case.

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT – 7
68142-0004/LEGAL122850372.4

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

effectively be barred from challenging the very discriminatory voting practices that discourage minority voters from going to the polls in the first place:

> [I]f defendants could defeat a showing of political cohesion by showing little more than that many minority voters were apathetic, Section 2 would be seriously weakened.  Low voter registration and turnout have often been considered evidence of minority voters' lack of *ability* to participate effectively in the political process. . . . [D]epressed registration rates may often be traceable in part to historical discrimination.

*Id.* at 1416 n.4 (citing cases); *see also U.S. v. Blaine Cnty.*, 363 F.3d 897, 911 (9th Cir. 2004) ("[I]f low voter turnout could defeat a section 2 claim, excluded minority voters would find themselves in a vicious cycle: their exclusion from the political process would increase apathy, which in turn would undermine their ability to bring a legal challenge to the discriminatory practices, which would perpetuate low voter turnout, and so on.").  Although Defendants disclaim any argument "that lower turnout among Latino voters precludes a finding of Latino voter cohesion under the second *Gingles* factor," Response Br. at 20 n.10, their emphasis on broad confidence intervals for Latino voting patterns does just that, in contravention of Ninth Circuit precedent.

Dr. Alford's emphasis on broad confidence intervals around Latino voting patterns, thus, does not introduce a material fact dispute, but rather reflects a fundamental misunderstanding of the law.[4]  Indeed, when confronted

----

[4] When asked, "Is it your understanding that the level of turnout among [the] minority population is relevant to Gingles 2 analysis," Dr. Alford answered unequivocally, "Yes."  Alford Dep. at 140:6-8.

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT – 8
68142-0004/LEGAL122850372.4

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

with the same issue by the same expert, the *Farmers Branch* court refused to credit the notion that a low concentration of minority votes negates evidence of minority cohesion. *See* 2012 WL 3135545, at *11 n.33. Although the court "recognize[d] that the confidence intervals for Hispanic voting patterns are broad" due to the fact that "there were no data on precincts with a high concentration of Hispanic voters," it noted "[t]here does not appear to be a solution to this problem." *Id.* Because "it [was] undisputed that a point estimate is the 'best estimate,'" the court relied on point estimates to find that *Gingles* 2 was satisfied. *Id.* The Court should do the same here.

Third, Defendants attempt to create a fact dispute by pointing to immaterial discrepancies between the experts' estimates in their supplemental reports. Response Br. at 16. But Defendants' own expert testified that while he was curious about the discrepancies, he "still [doesn't] think they're substantively different." Alford Dep. at 23:10-15, 179:1-5; *see also id.* at 23:18-20 ("If I took his results and substituted them for mine, it wouldn't change my substantive conclusion."). Defendants attempt to manufacture a factual dispute that simply does not exist.[5]

_____

[5] In any event, with respect to the Reynaga election, Dr. Alford agrees that "Reynaga is above 50 percent. So if we accept the point estimate, he's [the] candidate of choice." Alford Dep. at 178:2-3. With respect to the Jevons election, Dr. Alford admits, "Jevons is much closer to being the candidate of choice in [his] analysis than in Dr. Engstrom's analysis." *Id.* at 179:9-11. Whatever the numbers, Plaintiffs do not even assert that this election

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT – 9
68142-0004/LEGAL122850372.4

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Finally, Defendants contend that the scatterplots offered in Dr. Alford's initial report "intuitively suggest[]" the absence of minority cohesion. Response Br. at 18.  But regardless of their "intuitive" appeal, according to Dr. Alford himself, scatterplots present no new analysis and are not necessary to a cohesion analysis.  Alford Dep. at 122:1-16, 139:11-15; *see also id.* at 103:5-13 ("[T]here certainly are cases where this could be important.  *But this is not one of those cases.*").  In fact, Dr. Alford's analysis of the 2013 elections includes no scatterplots, relying solely on the ecological inference method Dr. Engstrom uses and that Dr. Alford testified was superior to all other statistical methods. *See* ECF No. 79-3, Ex. O; Alford Dep. at 100:15-101:9.  Dr. Alford's decision to forgo the use of scatterplots in his supplemental report confirms his testimony that they add little to the analysis of minority cohesion.  Indeed, even if the scatterplots were useful, Dr. Alford's selective reporting of scatterplot data renders them inappropriate for the Court's consideration.

In sum, Defendants advance purported material factual disputes their own expert disclaims.  All available data indicates that "a significant number of [Latinos] usually vote for the same candidates" in Yakima, *Gingles*, 478 U.S. at 56, and no more is needed to satisfy the second prong of *Gingles*.

### 3.    No Genuine Issue of Material Fact as to *Gingles* 3

Defendants' response regarding the third *Gingles* precondition fares no better.  Defendants "do not disagree" that (1) "every single Latino candidate

---

demonstrates minority cohesion, relying instead upon the nine other elections to demonstrate satisfaction of *Gingles* 2.  *See* Pls.' SUMF ¶¶ 154-55, 162.

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

(and Proposition 1) [has been] defeated," and (2) "the average crossover vote for the Latino candidate or Proposition 1 was less than 30%." Response Br. at 19. Nor do they dispute that neither the point estimates nor confidence intervals for non-Latino votes in favor of Latino candidates reach majority level. *See* Pls.' SUMF ¶¶ 163-64; *see also Farmers Branch*, 2012 WL 3135545, at *12 (relying on these facts to find that plaintiffs had established *Gingles* 3). Instead of disputing the existence of racially polarized voting in Yakima, Defendants focus on its potential cause—namely, low minority turnout. But *Gingles* itself confirms that causation is irrelevant to the analysis.

Defendants cite *Gingles* for the proposition that Plaintiffs must show "that the 'defeat' of the 'minority's preferred candidate' is caused by the 'white majority' voting bloc, and not by some other cause." Response Br. at 19-20 (quoting *Gingles*, 478 U.S. at 51). One will search in vain, however, for any passage in *Gingles* so holding. On the contrary, an entire subsection of the plurality opinion is entitled (in bold and italics) "***Causation Irrelevant to Section 2 Inquiry***." *Gingles*, 478 U.S. at 63. *Gingles* makes clear:

> For purposes of § 2, the legal concept of racially polarized voting incorporates neither causation nor intent. It means simply that the race of voters correlates with the selection of a certain candidate or candidates.

*Id.* at 62. Actual voting patterns, not hypothetical outcomes or explanations, are what matters to the *Gingles* inquiry. *Id.* at 73.

It would be inconsistent with Section 2's purpose if low minority turnout precludes satisfaction of the third *Gingles* factor where it evidences the effects of past discrimination. *See* Pls.' Mot. at 40; *see also Gingles*, 478 U.S. at 70.

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT – 11
68142-0004/LEGAL122850372.4

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Whether incorporated as part of *Gingles* 2 or 3, if low turnout could defeat a Section 2 claim, the effects of a Section 2 violation would preclude a remedy.[6]

Finally, while Defendants acknowledge that the racial bloc voting statistics here are similar to those in other cases in which courts have found the *Gingles* test satisfied, they note that the Court must look at more than just the numbers, as there is no "'single, universally applicable standard for measuring undiluted minority voting strength.'"  Response Br. at 21 (quoting *Gingles*, 478 U.S. at 94-95 (O'Connor, J., concurring)).  Plaintiffs could not agree more. There is no question that "[t]he amount of white bloc voting that can generally minimize or cancel [minority] voters' ability to elect representatives of their choice . . . will vary from district to district," but what matters is simply whether "a white bloc . . . normally will defeat the combined strength of minority support plus white 'crossover' voters."  478 U.S. at 56.  Under this straightforward definition, there can be no credible dispute that Plaintiffs have satisfied the third *Gingles* precondition.  The white majority in Yakima does not just "normally" defeat the minority candidate of choice, it has *always* done so, even where white crossover voting has approached 47%.  Pls.' SUMF ¶ 122; *Gomez*, 863 F.2d at 1417 ("Such a pattern over time of minority electoral

_____

[6] *Fayette Cnty.*, 950 F. Supp. 2d at 1321 n.29 ("If defendants could elude a § 2 violation simply by proffering such explanations, proving racial bloc voting would be nearly impossible . . . because defendants could always point to some innocent explanation for the losing candidates' loss, i.e., it would essentially require plaintiffs to prove what they are not required to prove: racial animus.").

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT – 12
68142-0004/LEGAL122850372.4

failure strongly indicates racial bloc voting."); *see also Gingles*, 478 U.S. at 51 (white majority must vote "sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate"); *Old Person v. Cooney*, 230 F.3d 1113, 1122 (9th Cir. 2000) ("usually" means "more than half of the time").

In sum, Defendants present a distortion of the fundamental principles that underlie Section 2. The facts are undisputed and the law is unassailable: Plaintiffs are entitled to summary judgment on the third *Gingles* precondition.

**C.    Plaintiffs Have Established a Section 2 Violation Based on the Totality of the Circumstances**

Plaintiffs offered 21 numbered statements of fact pertaining to the totality of circumstances. *See* Pls.' SUMF ¶¶ 165-85. Defendants dispute none of them. *See* ECF No. 83 at 9. In response, they offer four statements of fact, two of which pertain to the election of Latino candidates in other jurisdictions, one stating the unsupported conclusion of their expert Dr. Thernstrom, and one statement from one of the 25 Plaintiffs' witnesses Defendants deposed. *Id.*

Defendants promise the Court that they "will present additional evidence at trial" regarding the Senate Factors. Response Br. at 24. But "bare allegations without evidentiary support" simply do not suffice to defeat summary judgment. *Estate of Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1033 n.14 (9th Cir. 2008). Rather, Defendants must establish "specific facts showing that there is a genuine issue for trial" on the basis of admissible evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Rather than presenting the requisite evidence, they claim the summary judgment process "prevents Defendants from presenting the full body of evidence in support of

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT – 13
68142-0004/LEGAL122850372.4

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:   206.359.9000

their case."  Response Br. at 22.  But no rule limits the length of Defendants'
statement of facts or the quantum of evidence they may present in support of
their response; indeed, despite the fact that the Court granted the parties' joint
request to allow 50-page briefs, Defendants' response brief is only 32 pages.

The evidence that *is* in the record is clear, compelling, and undisputed.

## 1.    Success of Minority Candidates (Senate Factor 7)

It is undisputed that not a single Latino has been elected to the Yakima
City Council.  This fact alone certainly "weighs strongly in favor of vote
dilution."  *Fayette Cnty.*, 950 F. Supp. 2d at 1322.  Indeed, for many courts the
failure of a jurisdiction to elect minority candidates ends the inquiry.  *See, e.g.*,
*Sanchez v. Colo.*, 97 F.3d 1303, 1325 (10th Cir. 1996) ("[Plaintiffs] offer the
single fact an Hispanic has not been elected to this particular office since 1940.
That fact is probative under the totality, notwithstanding the mayoral offices,
rural electrical boards, and other seats Hispanics have achieved."); *Farmers
Branch*, 2012 WL 3135545, at *13; *Johnson v. Halifax Cnty.*, 594 F. Supp. 161,
165-66 (E.D.N.C. 1984).  While Defendants argue that Plaintiffs offered little
evidence "regarding the viability of each Latino candidate for City Council,"
Response Br. at 23, no case affirmatively requires Section 2 plaintiffs to
establish the credentials of each minority candidate, and Defendants offer no
evidence on this score to rebut Plaintiffs' evidence.[7]

———————————

[7] Defendants' suggestion that Latino candidates should be deemed unqualified
until proven otherwise—and by implication that their white opponents are
presumed viable—is problematic in its own right.

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT – 14
68142-0004/LEGAL122850372.4

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Instead Defendants point to the election of two Latinos outside of Yakima over a decade ago. *Id.* at 24. As an initial matter, it is telling that these are the best examples of Latino electoral success in the Yakima Valley that Defendants could find. In any event, unlike other Senate Factors that include consideration of practices emanating from the state or county, *see Gomez*, 863 F.2d at 1418, Senate Factor 7 looks to minority electoral success "'in the jurisdiction,'" *Gingles*, 478 U.S. at 37 (quoting S. Rep. No. 97-417, at 29). Even if they were relevant, "'the election of a few minority candidates does not necessarily foreclose the possibility of dilution of the [minority] vote,'" for if "'a minority candidate's success at the polls is conclusive proof of a minority group's access to the political process, we would merely be inviting attempts to circumvent the Constitution.'" *Sanchez*, 97 F.3d 1303.

Most importantly, Defendants present no evidence regarding these elections, leaving the Court to wonder, among other things, whether these Latinos were the minority candidates of choice. Indeed, the Yakima School Board elections are telling, just not for the point Defendants would propose: (1) no Latino has won a contested Yakima School Board race since 2003, (2) all Latinos who gained seats on the board since 2001 did so by appointment rather than election, and (3) all Latinos, save one, who faced an opponent upon re-election subsequently lost their seats. ECF No. 79-3, Ex. Q ¶¶ 28-29; Pls.' SUMF ¶¶ 157, 161.

In short, Defendants can point to no evidence to mitigate the stark reality that no Latino has ever been elected to the Yakima City Council.

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**2.      Racially Polarized Voting (Senate Factor 2)**

With regard to this factor, Defendants rely entirely on the flawed legal theories advanced in support of their argument on the third *Gingles* precondition.  Response Br. at 24.  For all of the reasons sets forth above and in Plaintiffs' Motion, *supra* Section II.B.3; Pls.' Mot. at 31-32, there is no question that voters in Yakima vote along racial lines.

**3.      History of Official Voting Discrimination (Senate Factor 1)**

Defendants can hardly dispute that (1) for many years Washington (and Yakima County) imposed a literacy test and (2) the U.S. Department of Justice filed a lawsuit against Yakima County under Section 203 of the VRA for failure to provide bilingual voting materials, resulting in a consent decree in which the County agreed to provide Spanish-language access to elections.  Pls.' SUMF ¶¶ 167, 171-72.   This historical record of official voting-related discrimination in the state and county speaks for itself.

Defendants rely on the *vacated* opinion of the three-judge panel ruling against claims regarding Yakima County's administration of literacy tests.  But in finding that plaintiffs showed  only "one isolated incident where what might be called a literacy test was . . . administered," that panel applied a skewed definition of "literacy tests" that excluded inquiries as to whether an applicant could speak and read English.  *Mexican-Am. Fed'n-Wash. State v. Naff*, 299 F. Supp. 587, 592-93 (E.D. Wash. 1969).  Defendants do not mention this nuance, and their reliance on a vacated panel decision misconstruing the meaning of a literacy test places them on the wrong side of history.

Nor can Defendants erase this ignoble history by arguing it is a thing of

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

the past, particularly where the federal government filed suit against Yakima County just ten years ago for discriminatory voting practices against Latinos. Try as they might, Defendants cannot explain away the historical record, which weighs in favor of Plaintiffs' vote dilution claim.

### 4.    Enhancing Factors (Senate Factor 3)

Defendants do not dispute the existence of the following election practices in Yakima, all of which have been found by courts to "enhance the opportunity for discrimination against the minority group," *Gingles*, 478 U.S. at 37: (1) numbered posts; (2) staggered terms; (3) residency requirements for districts; and (4) majority vote requirements.  *See* Pls.' SUMF ¶¶ 2-9.  Nor do they dispute that these practices preclude the use of "single shot" voting.  *Id.* ¶¶ 10-11.  The cases Defendants cite only further prove Plaintiffs' point.  In *Martin v. Allain*, 658 F. Supp. 1183, 1194 (S.D. Miss. 1987), the court found that because the majority-vote requirement applied only in party primaries and not general elections, "many black candidates have qualified and run as independents rather than as candidates of a particular political party."  Yakima does just the opposite, allowing a plurality win in its primary elections but then imposing an effective majority-vote requirement in each top-two general election.  As a result, even those minority candidates who survive the primary are consistently defeated in the general elections.  Pls.' SUMF ¶¶ 123, 132. *Askew v. City of Rome*, 127 F.3d 1355, 1386 (11th Cir. 1997), meanwhile, found "the fact that Rome has used majority vote requirements *in the past*" to be of "diminished importance" precisely "because the majority vote practice has been abolished" (emphasis added).  These facets of Yakima's election

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

system live on and have a discriminatory effect on Latino citizens, which incontrovertibly weighs in favor of Plaintiffs' claim regarding Senate Factor 3.

### 5.    Effects of Past Discrimination (Senate Factor 5)

Defendants can hardly dispute the data showing disproportionately low income levels, educational achievement, employment, and health care conditions for Latinos in Yakima. *See* Pls.' SUMF ¶¶ 173-83.  Defendants suggest there is no consensus on the applicable standard for evaluating the extent to which Latinos "bear the effects of discrimination" in these areas "which hinder their ability to participate effectively in the political process," *Gingles*, 478 U.S. at 37.  To the contrary, the standard upon which Plaintiffs rely is based on the verbatim language of the Senate Report.  *See LULAC, Council No. 4434 v. Clements*, 999 F.2d 831, 866-67 (5th Cir. 1993) (quoting S. Rep. 97-417 at 29 n.114).  Defendants' contention, moreover, that Plaintiffs have failed to prove that Defendants either created these disparate conditions or intentionally maintained them, Response Br. at 29, ignores both Ninth Circuit precedent that courts must consider the actions of government entities other than the defendant, *Gomez*, 863 F.2d at 1418, and Congress's "repudiati[on] [of] the intent test" in establishing a Section 2 claim, *Gingles*, 478 U.S. at 71.

Finally, even crediting Defendants' suggestion that information distinguishing "between Latinos who are recent immigrants and those who are citizens" is critical to a determination on Senate Factor 5, Response Br. at 29-30, Defendants do not point to any record evidence on this front to rebut Plaintiffs' proof.  Once again, Defendants' vague references to the supposed existence of relevant evidence does not pass muster on summary judgment.

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT – 18
68142-0004/LEGAL122850372.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47

### 6.    Racial Appeals in Campaigns (Senate Factor 6)

Defendants dispute Plaintiffs' evidence of racial appeals in campaigns solely on the strength of Dr. Thernstrom's testimony.  Response Br. at 30. According to Dr. Thernstrom, references to a candidate's ethnicity are not racial appeals within the meaning of Senate Factor 6.  *Id.*  The case law, Pls.' Mot. at 40, says otherwise, however, and Dr. Thernstrom's unilateral, unsupported opinion on what "counts" as a racial appeal is of no consequence. Indeed, Dr. Thernstrom does not even cite in his report the racial appeals presented in Plaintiffs' motion, including a councilmember's reference to Sonia Rodriguez as the "ethnic candidate."  *See* ECF No. 79-4, Ex. V.

Defendants also cite *McNeil v. Springfield, Ill.*, 658 F. Supp. 1015 (C.D. Ill. 1987), to suggest that Plaintiffs have provided but "a single occurrence" of racial appeals.  First, Plaintiffs here have cited multiple appeals regarding one particularly prominent Latina candidate.  Second, the "appeal" in *McNeil* was a one-off racial slur by a person in the audience at a luncheon, not a public statement by a city official or a published news article.  Finally, the *McNeil* court found a Section 2 violation based on the totality inquiry, notwithstanding the lack of racial appeals.  *See id.* at 1033.

### 7.    Additional Factors

Finally, Defendants fault Plaintiffs for not discussing "the eighth and ninth Senate factors."  Response Br. at 31.  These, however, are not "'typical factors'" to be considered in Section 2 claims, but rather "'[a]dditional factors that in some cases have had probative value as part of plaintiffs' evidence to establish a violation.'"  *Gingles*, 478 U.S. at 36-37 (quoting S. Rep. No. 97-417,

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT – 19
68142-0004/LEGAL122850372.4

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

at 28-29).  Moreover, Plaintiffs "need not prove a majority of these factors, nor even any particular number of them in order to sustain their claims," *Fayette Cnty.*, 950 F. Supp. 2d at 1298, and "failure . . . to establish any particular factor is not rebuttal evidence of no violation," *Gomez*, 863 F.2d at 1412.

Even if Defendants do ultimately "offer further testimony and evidence on this point," Response Br. at 32, these factors would do little to fend off Plaintiffs' existing mountain of undisputed evidence.  A political subdivision's responsiveness "has little probative value," *Port Chester*, 704 F. Supp. 2d at 446, and thus "'defendants' proof of some responsiveness would not negate plaintiffs' showing by other, more objective factors . . . that minority voters nevertheless were shut out of equal access to the political process,'" *U.S. v. Marengo Cnty. Comm'n*, 731 F.2d 1546, 1572 (11th Cir. 1984) (quoting S. Rep. No. 97-417 at 29 n.116).  Indeed, "responsiveness is a highly subjective matter, and this subjectivity is at odds with the emphasis of section 2 on objective factors." *Id.*  Similarly, even if Defendants could adduce a "strong . . . policy in favor of at-large elections," this is "less important under the results test" than proof of a "tenuous explanation for at-large elections." *McMillan v. Escambia Cnty., Fla.*, 748 F.2d 1037, 1045 (5th Cir. 1984).  In other words, not only have Defendants cited no evidence establishing these factors in their favor, even if they had, it would be of little value to the analysis of Plaintiffs' Section 2 claim.

## III.    CONCLUSION

For the reasons set forth above and in Plaintiffs' Motion for Summary Judgment, Plaintiffs respectfully request the Court to enter summary judgment in their favor on liability under Section 2 of the VRA.

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT – 20
68142-0004/LEGAL122850372.4

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

DATED: August 5, 2014     *s/ Kevin J. Hamilton*
                          Kevin J. Hamilton, WSBA No. 15648
                          Abha Khanna, WSBA No. 42612
                          William B. Stafford, WSBA No. 39849
                          **Perkins Coie LLP**
                          1201 Third Avenue, Suite 4900
                          Seattle, WA 98101-3099
                          Telephone: 206.359.8000
                          Fax: 206.359.9000
                          Email: KHamilton@perkinscoie.com
                          Email: AKhanna@perkinscoie.com
                          Email: WStafford@perkinscoie.com

                          *s/ Sarah A. Dunne*
                          Sarah A. Dunne, WSBA No. 34869
                          La Rond Baker, WSBA No. 43610
                          AMERICAN CIVIL LIBERTIES UNION OF
                          WASHINGTON FOUNDATION
                          901 Fifth Avenue, Suite 630
                          Seattle, Washington 98164
                          Telephone: (206) 624-2184
                          Email: dunne@aclu-wa.org
                          Email: lbaker@aclu-wa.org

                          *s/ Joaquin Avila*
                          Joaquin Avila (*pro hac vice*)
                          P.O. Box 33687
                          Seattle, WA 98133
                          Telephone: (206) 724-3731
                          Email: joaquineavila@hotmail.com

                          *s/ M. Laughlin McDonald*
                          M. Laughlin McDonald (*pro hac vice*)
                          ACLU Foundation
                          230 Peachtree Street, NW Suite 1440
                          Atlanta, Georgia 30303-1513
                          Telephone: (404) 523-2721
                          Email: lmcdonald@aclu.org

                          **Attorneys for Plaintiffs**

**REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT – 21**
68142-0004/LEGAL122850372.4

## CERTIFICATE OF SERVICE

I certify that on August 5, 2014, I electronically filed the foregoing

Reply in Support of Plaintiffs' Motion for Summary Judgment with the Clerk

of the Court using the CM/ECF system, which will send notification of such

filing to the following attorney(s) of record:

Francis S. Floyd WSBA 10642        *Counsel for*       ☒ VIA CM/ECF
John Safarli WSBA 44056            *Defendants*        SYSTEM
Floyd, Pflueger & Ringer, P.S.                         ☐ VIA FACSIMILE
200 W. Thomas Street, Suite 500                        ☐ VIA MESSENGER
Seattle, WA 98119                                      ☐ VIA U.S. MAIL
(206) 441-4455                                         ☐ VIA EMAIL
ffloyd@floyd-ringer.com
jsafarli@floyd-ringer.com

I certify under penalty of perjury that the foregoing is true and correct.

DATED:  August 5, 2014          **PERKINS COIE LLP**

                                s/Abha Khanna
                                Abha Khanna, WSBA No. 42612
                                AKhanna@perkinscoie.com
                                PERKINS COIE LLP
                                1201 Third Avenue, Suite 4900
                                Seattle, WA 98101-3099
                                (206) 359-6217

                                Attorney for Plaintiffs

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT – 22
68142-0004/LEGAL122850372.4