HONORABLE THOMAS O. RICE

Sarah A. Dunne, WSBA No. 34869
La Rond Baker, WSBA No. 43610
AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
Telephone: (206) 624-2184
Email: Dunne@aclu-wa.org
       LBaker@aclu-wa.org

Kevin J. Hamilton, WSBA No. 15648
Abha Khanna, WSBA No. 42612
William Stafford, WSBA No. 39849
Perkins Coie LLP
1201 Third Avenue, Ste. 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Email: KHamilton@perkinscoie.com
       AKhanna@perkinscoie.com
       WStafford@perkinscoie.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROGELIO MONTES and MATEO ARTEAGA, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF YAKIMA, MICAH CAWLEY, in his official capacity as Mayor of Yakima, and MAUREEN ADKISON, SARA BRISTOL, KATHY COFFEY, RICK ENSEY, DAVE ETTL, and BILL LOVER, in their official capacity as members of the Yakima City Council, <br><br> Defendants. | NO. 12-CV-3108 TOR <br><br> **MOTION FOR ENTRY OF PLAINTIFFS' PROPOSED REMEDIAL PLAN AND FINAL INJUNCTION** |

MOTION FOR ENTRY OF PLS.'
PROPOSED REMEDIAL PLAN AND
INJUNCTION
LEGAL123638726.3

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................1

II.     PROCEDURAL BACKGROUND .........................................................2

III.    ARGUMENT .......................................................................................2

        A.      The Court Should Reject Defendants'
                Proposed Remedial Plan ........................................................4

                1.      Defendants' Proposal for Two At-Large
                        Positions Violates Both Washington Law and
                        the VRA ......................................................................5

                2.      Defendants' Modifications to the Previous At-
                        Large Election System Do Not Cure the
                        Problem........................................................................8

                3.      Defendants' Five-District Proposal Dilutes
                        Latino Voting Strength...............................................11

        B.      The Court Should Adopt Plaintiffs' Illustrative
                Plan 1 ......................................................................................15

        C.      The Court Should Immediately Implement the
                Remedial Map ........................................................................17

IV.     CONCLUSION ..................................................................................19

MOTION FOR ENTRY OF PLS.'
PROPOSED REMEDIAL PLAN AND
INJUNCTION  – i
LEGAL123638726.3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Buchanan v. City of Jackson, Tenn.*,
    683 F. Supp. 1537 (W.D. Tenn. 1988) ...................................................3, 6, 8

*Citizens for Good Gov't v. City of Quitman, Miss.*,
    148 F.3d 472 (5th Cir. 1998) ........................................................................14

*Clark v. Roemer*,
    777 F. Supp. 471 (M.D. La. 1991) ...............................................................16

*Connor v. Finch*,
    431 U.S. 407 (1977) .....................................................................................14

*Corder v. Kirksey*,
    639 F.2d 1191 (5th Cir. 1981) ......................................................................14

*Desena v. Maine*,
    793 F. Supp. 2d 456 (D. Me. 2011) ..............................................................16

*Dickinson v. Ind. State Election Bd.*,
    933 F.2d 497 (7th Cir. 1991) ........................................................................11

*Dillard v. Crenshaw Cnty., Ala.*,
    649 F. Supp. 289 (M.D. Ala. 1986)................................................2, 7, 8, 15

*Dillard v. Crenshaw Cnty., Ala.*,
    831 F.2d 246 (11th Cir. 1987) ........................................................................2

*Harvell v. Blytheville Sch. Dist. No. 5*,
    126 F.3d 1038 (8th Cir. 1997) ............................................................3, 6, 15

*Johnson v. DeGrandy*,
    512 U.S. 997 (1994) .....................................................................................12

MOTION FOR ENTRY OF PLS.'
PROPOSED REMEDIAL PLAN AND
INJUNCTION  – ii
LEGAL123638726.3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*Large v. Fremont Cnty., Wyo.*,
  670 F.3d 1133 (10th Cir. 2012) ................................................................5, 15

*LULAC Council No. 4836 v. Midland Indep. Sch. Dist.*,
  648 F. Supp. 596 (W.D. Tex. 1986) ........................................................7, 16

*Mahan v. Howell*,
  410 U.S. 315 (1973) ....................................................................................14

*Neal v. Harris*,
  837 F.2d 632 (4th Cir. 1987) ......................................................................16

*United States v. Dallas County Comm'n*,
  850 F.2d 1433 (11th Cir. 1988) ..............................................................7, 15

*United States v. Osceola Cnty., Fla.*,
  474 F. Supp. 2d 1254 (M.D. Fla. 2006) ...........................................7, 12, 15

*United States v. Paradise*,
  480 U.S. 149 (1987) ......................................................................................3

*Upham v. Seamon*,
  456 U.S. 37 (1982) ........................................................................................3

*Wallace v. House*,
  377 F. Supp. 1192 (W.D. La. 1974) ...........................................................16

*Wise v. Lipscomb*,
  437 U.S. 535 (1978) .................................................................................3, 14

**STATUTES**

42 U.S.C. § 1973(b) .............................................................................1, 4, 12

RCW 35.18.020(2) ..........................................................................................17

RCW 35.18.190 ................................................................................................5

MOTION FOR ENTRY OF PLS.'
PROPOSED REMEDIAL PLAN AND
INJUNCTION  – iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

RCW 35.18.210 ...................................................................................5

RCW 35A.02.050 ..............................................................................18

RCW 35A.13.033 ................................................................................5

Voting Rights Act, 42 U.S.C. § 1973(b) ...................................passim

**OTHER AUTHORITIES**

1982 U.S.C.C.A.N. 177 ......................................................................2

Mike Faulk, *Yakima, ACLU voting district plans remain far apart*,
    Yakima Herald, Republic, Oct. 1, 2014, *available at*
    http://www.yakimaherald.com/home/2540870-8/yakima-aclu-
    voting-district-plans-remain-far-apart ...................................10, 13

MOTION FOR ENTRY OF PLS.'
PROPOSED REMEDIAL PLAN AND
INJUNCTION  – iv

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# I.    INTRODUCTION

The Court's Summary Judgment Order definitively found that City Council elections in Yakima "are not 'equally open to participation' by Latino voters," in violation of Section 2 of the Voting Rights Act ("VRA").  ECF No. 108 ("Op.") at 65 (quoting 42 U.S.C. § 1973(b)).  The Court's remedy for the violation should be no less definitive—to fully and completely stamp out minority vote dilution in Yakima and provide Latinos an effective opportunity to elect their candidates of choice, now and in the future.

Defendants' proposed remedy falls woefully short of this standard.  To be sure, courts often defer to local legislative bodies to remedy a Section 2 violation, but a legislature does not have carte blanche, and whatever remedy is ultimately adopted must, at a minimum, provide a complete remedy for the violation.  A defendant's proposed remedial plan merits no deference where it conflicts with state and federal law.  Defendants' plan does both.  Not only does it contravene Washington law in its proposed election scheme for Mayor and Assistant Mayor, it perpetuates the Section 2 violation by maintaining two at-large positions and creating only five rather than seven single-member districts.  Plaintiffs' Illustrative Plan 1, by contrast, is familiar to the parties and the Court, abides by the strict rules governing court-ordered plans, and, most importantly, provides a full and fair remedy to the City's Section 2 violation.

Accordingly, Plaintiffs respectfully request that the Court reject Defendants' proposal and adopt Plaintiffs' proposed remedy and injunction.

MOTION FOR ENTRY OF PLS.'
PROPOSED REMEDIAL PLAN AND
INJUNCTION  – 1
LEGAL123638726.3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47

## II.    PROCEDURAL BACKGROUND

On August 22, 2014, the Court granted Plaintiffs' Motion for Summary Judgment and ordered the parties to meet and confer in an effort to agree upon a joint proposed injunction and a joint proposed remedial districting plan.  Op. at 66-67.  The Court further ordered that in the event the parties are unable to agree on the terms of an injunction or remedial districting plan, they may submit separate proposals.  *Id.* at 66.

On September 11, 2014, the parties discussed the broad contours of their proposals over the telephone.  Declaration of Abha Khanna in Support of. Mot. for Entry of Pls.' Proposed Remedial Plan and Final Injunction (Oct. 3, 2014) ("Khanna Decl.") ¶ 1.  On September 23, Defendants provided their proposed remedial plan to Plaintiffs, and Plaintiffs informed Defendants that they intend to propose Mr. Cooper's Illustrative Plan 1 as a remedy.  *Id.* ¶ 2.  The parties conferred in-person two days later, but they were unable to agree on the terms of a proposed remedial plan or injunction.  Accordingly, the parties agreed to submit separate proposals to the Court.  *Id.* ¶ 3.

## III.    ARGUMENT

Where a Section 2 violation has been established, "'[t]he court should exercise its traditional equitable powers to fashion the relief so that it *completely* remedies the prior dilution of minority voting strength and *fully* provides equal opportunity for minority citizens to participate and to elect candidates of their choice.'"  *Dillard v. Crenshaw Cnty., Ala.*, 831 F.2d 246, 250 (11th Cir. 1987) (quoting 1982 U.S.C.C.A.N. 177, 208); *see also Dillard v. Crenshaw Cnty., Ala.*, 649 F. Supp. 289, 293 (M.D. Ala. 1986) ("Without

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

question, the remedy fashioned by a court should reach the nature and scope of the violation found.") (citing *Upham v. Seamon*, 456 U.S. 37 (1982)).  As the Supreme Court has stated:

> A district court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future.  Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies.

*United States v. Paradise*, 480 U.S. 149, 183-84 (1987) (internal quotation marks and citations omitted), *quoted in Buchanan v. City of Jackson, Tenn.*, 683 F. Supp. 1537, 1541 (W.D. Tenn. 1988).

Thus, the Court's primary function is to fashion an effective remedy.  In doing this, courts should "afford a reasonable opportunity for the legislature to meet constitutional requirements by adopting a substitute measure."  *Wise v. Lipscomb*, 437 U.S. 535, 540 (1978).  But courts must not "defer blindly to legislative prerogative" in deciding whether a legislature's proposed plan is acceptable under the VRA.  *Buchanan*, 683 F. Supp. at 1541.  Specifically, "[t]he district court need not defer to a state-proposed remedial plan . . . if the plan does not completely remedy the violation or if the plan itself violates section 2 of the Act."  *Harvell v. Blytheville Sch. Dist. No. 5*, 126 F.3d 1038, 1040 (8th Cir. 1997).

Defendants' proposal here not only fails to fully cure the Section 2 violation, it perpetuates it.  Given Defendants' failure to devise an effective

MOTION FOR ENTRY OF PLS.'
PROPOSED REMEDIAL PLAN AND
INJUNCTION  – 3
LEGAL123638726.3

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

legal remedy, the Court should adopt Plaintiffs' Illustrative Plan 1, which fully addresses the Section 2 violation found by the Court and provides Latinos a full and fair opportunity to participate in the political process in Yakima.

**A.    The Court Should Reject Defendants' Proposed Remedial Plan.**

The current City of Yakima election system employs a hybrid at-large system, in which four City Council members are nominated from residency districts, three are nominated citywide, and all are ultimately elected at-large. The Court struck down that system as a violation of Section 2, noting that pervasive racially polarized voting has resulted in the "non-Latino majority in Yakima routinely suffocat[ing] the voting preferences of the Latino community." Op. at 48. Compounded by the "depressed socio-economic conditions" of Latinos, evidence of historical discrimination, and the reality that not a single Latino candidate has been elected to the City Council "in the 37 years that the current voting system has been in place," *id.* at 53, 62-63, the Court found that Yakima's electoral system is "not 'equally open to participation' by Latino voters," *id.* at 65 (quoting 42 U.S.C. § 1973(b)).

Defendants' proposed remedial plan would simply substitute the City's current hybrid at-large system with a new hybrid at-large system. Defendants propose a plan which would create five single-member districts and maintain two at-large City Council seats. Moreover, according to Defendants' proposal, the two at-large members will be automatically designated the Mayor and Assistant Mayor—the two highest-ranking elected City officials.

MOTION FOR ENTRY OF PLS.'
PROPOSED REMEDIAL PLAN AND
INJUNCTION – 4
LEGAL123638726.3

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

This electoral scheme is fundamentally at odds with this Court's Summary Judgment Order, Section 2 of the VRA, and Washington law. The Court should accordingly reject Defendants' proposal.

### 1.    Defendants' Proposal for Two At-Large Positions Violates Both Washington Law and the VRA.

As an initial matter, Defendants' proposal merits no deference from this Court because it conflicts with state law. In a council-manager system such as that used by the City, Washington law does not permit the election of a city's mayor by a vote of city residents, at-large or otherwise. Rather, in a council-manager system, city council members "shall choose a chair from among their number who shall have the title of mayor." RCW 35.18.190. The same goes for a "mayor pro tempore." RCW 35.18.210.[1] Defendants' failure to propose a remedy that complies with state law eliminates any claim to deference to which their proposal might have been entitled. *See Large v. Fremont Cnty., Wyo.*, 670 F.3d 1133, 1148 (10th Cir. 2012) ("[W]here a local governmental body's proposed remedial plan for an adjudged Section 2 violation unnecessarily conflicts with state law, it is not a legislative plan entitled to deference by the federal courts."). As a result, Defendants' proposed plan is not a lawful exercise of legislative power, and the Court should implement a court-ordered remedy. *Id.* at 1139.

_____

[1] If Defendants wish to change the system by which the Mayor is elected, they must place a proposition before the voters of the city. RCW 35A.13.033.

MOTION FOR ENTRY OF PLS.'
PROPOSED REMEDIAL PLAN AND
INJUNCTION – 5
LEGAL123638726.3

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

In any event, even if Defendants' proposal did comport with state law, the Court should reject it because it does not fully remedy the Section 2 violation.  Defendants' insistence on maintaining two at-large seats preserves the very minority vote dilution that requires remediation.  Where, as here, "there can be no serious dispute that voting in Yakima is racially polarized," Op. at 54, the creation of a system in which two out of seven elected officials are elected citywide strongly suggests that those seats will be off limits to Latino voters.  The racialized voting patterns the Court observed just six weeks ago have not magically disappeared; rather, the state of affairs described in the Court's Summary Judgment Order mandates a remedy that eliminates at-large elections that "routinely suffocate[] the voting preferences of the Latino minority."  Op. at 48.

Courts routinely reject hybrid plans as remedies for voting rights violations, even where such plans contain one or more majority-minority districts.  In *Buchanan*, 683 F. Supp. 1537, after finding that at-large elections for the city commission violated Section 2, the court rejected defendants' proposed 6-3 hybrid plan (6 single-member districts and 3 at-large seats).  With regard to the at-large seats, the court concluded that "racially polarized voting would still take place," and minority "candidates would face the same difficulties in being elected as under the current system."  *Id.* at 1543, 1544; *see also id.* at 1545 ("The plan proposed by the defendants to remedy the present § 2 violation is itself violative of § 2 of the [VRA].").

Similarly, in *Harvell*, 126 F.3d at 1040, the Eighth Circuit affirmed the district court's rejection of the 5-2 plan proposed by a school district as a

MOTION FOR ENTRY OF PLS.'
PROPOSED REMEDIAL PLAN AND
INJUNCTION  – 6
LEGAL123638726.3

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

remedy for a Section 2 violation because "[t]he inability of black voters to affect the at-large elections under the 5-2 plan is no different from what it was under the previous electoral scheme."  In *United States v. Dallas County Commission*, 850 F.2d 1433, 1438-39 (11th Cir. 1988), the Eleventh Circuit rejected a 4-1 hybrid plan because "many of the concerns which prompted" the finding of a Section 2 violation four years earlier "continue to exist."  The court found that at-large election of the fifth member of the school board "perpetuates rather than ameliorates the inequities which have resulted in an abridgement of Dallas County's black citizens' access to the political process." *Id.* at 1440.  Other courts are in accord.  *See, e.g.*, *United States v. Osceola Cnty., Fla.*, 474 F. Supp. 2d 1254, 1256 (M.D. Fla. 2006) ("Hispanics in Osceola County have no reasonable opportunity to elect members in an at-large election.  Therefore, given the high degree of historically polarized voting, the extra two at large seats are completely out of the reach of the Hispanic community."); *LULAC Council No. 4836 v. Midland Indep. Sch. Dist.*, 648 F. Supp. 596, 609 (W.D. Tex. 1986) ("[A]ny at-large election in MISD violates the provisions of . . . the [VRA].").

Worse still, Defendants would reserve for the at-large councilmembers the most powerful elected positions in the City: Mayor and Assistant Mayor. This system not only fails as a matter of law, it fails as a matter of principle: Defendants' attempt to cabin Latino voting strength to a single district, while preserving an at-large system for the highest offices in the City, hardly reflects a concerted effort to rectify the Section 2 violation under which Latino voters have long suffered.  Courts have rejected similar proposals.  In *Dillard*, 649 F.

MOTION FOR ENTRY OF PLS.'
PROPOSED REMEDIAL PLAN AND
INJUNCTION  – 7
LEGAL123638726.3

Supp. at 296, the district court rejected a hybrid plan in which a commission chairperson would be elected at-large: "An at-large elected member would increase the voting membership of the county commission, would participate as a member of the commission, and would exercise enhanced powers enjoyed by no other member of the commission.  To that extent, the members elected by a racially fair district election method would have their voting strength and influence diluted."  The court found that to adopt the at-large chairperson feature "in the face of the present social, political, and economic condition" would in effect authorize an election system "containing a public office completely beyond the reach of the counties' black citizens and thus reserved exclusively for the white citizens," an "intolerable [result] under section 2" where alternative electoral schemes are available.  *Id.* at 297; *see also Buchanan*, 683 F. Supp. at 1542-43 (striking down a proposed remedy where "the most important members of the Board, the Administrative Commissioners, would still be elected at-large by the entire City").

In sum, because Defendants' plan disregards state law, it comes cloaked with no political legitimacy and merits no deference.  Regardless, Defendants' proposal that the two highest offices in the City be elected at-large fails to provide a complete remedy to the Section 2 violation—it perpetuates the violation.  Accordingly, the Court should reject Defendants' proposal.

### 2. Defendants' Modifications to the Previous At-Large Election System Do Not Cure the Problem.

To be sure, Defendants no longer propose at-large elections that turn on the "place system," in which candidates run for a specific position on the City

MOTION FOR ENTRY OF PLS.'
PROPOSED REMEDIAL PLAN AND
INJUNCTION  – 8
LEGAL123638726.3

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47

Council in a top-two contest.  Instead, Defendants' proposal envisions that the two at-large positions will be elected from a single ballot with two winners, neither of whom are required to receive a majority of the votes.  But while this is an improvement on the existing system, it does not fully address the barriers Latinos face in at-large, citywide elections.

As Dr. Engstrom explains, the opportunity provided to minority voters in at-large systems such as the one proposed by Defendants is commonly measured by the "threshold of exclusion," or the percentage of voters the minority group must exceed in order to elect its candidate of choice regardless of how the majority votes.  Khanna Decl., Ex. 2 ¶ 5.  This threshold is based on a number of theoretical assumptions, including that every eligible Latino voter turns out on Election Day and casts a vote for the same candidate, and that the non-Latino voters spread their votes evenly across two other candidates.  *See id.*  Minority voting opportunities increase the more limited each person's vote is compared to the number of seats to be elected.  *Id.* ¶ 4; *see also* Op. at 58 ("[T]he fewer the number of candidates, the more difficult it becomes for the minority's chosen candidate to win the race outright.").

Under Defendants' proposed system, the threshold of exclusion is 33.33%.  Khanna Decl., Ex. 2 ¶ 7.  In other words, making the theoretical assumptions outlined above, Latinos must comprise 33.33% of the electorate in order for their preferred candidate to win an at-large seat without the support of non-Latino voters.  Where the LCVAP of the entire city falls well below that threshold, and not accounting for the historic low turnout rates of Latinos in at-large elections, *see* Op. at 59, Defendants' creative attempt to maintain the at-

MOTION FOR ENTRY OF PLS.'
PROPOSED REMEDIAL PLAN AND
INJUNCTION – 9
LEGAL123638726.3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

large election system does not offer a complete remedy to the minority vote dilution in Yakima.

Defendants' modifications to the current at-large system, moreover, do not address the barriers Latinos face running for at-large positions in terms of money and resources. *See* Op. at 62 ("[I]t can hardly be disputed that depressed socio-economic conditions have at least *some* detrimental effect on participation in the political process."); *Thornburg v. Gingles*, 478 U.S. 30, 69-70 (1986) ("Courts and commentators have recognized . . . that candidates generally must spend more money in order to win election in a multimember district than in a single-member district."). Single-member districts are the preferred remedy under Section 2 because of the benefits that smaller districts afford minority communities. *See Buchanan*, 683 F. Supp. at 1542 ("These six small districts would be advantageous to black candidates because the expense of mounting a campaign throughout a large area would be decreased.").

In sum, Defendants' at-large proposal requires a host of assumptions to conclude that Latinos might have a shot at attaining one of the seats. Indeed, this scheme appears untested in Washington, *see* Mike Faulk, *Yakima, ACLU voting district plans remain far apart*, Yakima Herald Republic, Oct. 1, 2014, *available at* http://www.yakimaherald.com/home/2540870-8/yakima-aclu-voting-district-plans-remain-far-apart (Defendants stating "no other city in the state has such a system"), indicating that adoption of the plan would be in tension with state policy governing local election systems, and at best that it

MOTION FOR ENTRY OF PLS.'
PROPOSED REMEDIAL PLAN AND
INJUNCTION – 10
LEGAL123638726.3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

would prove an experiment in minority vote dilution.[2]  Unlike Defendants' at-large proposal, a single-member district plan requires no guessing games to determine whether Latinos in Yakima will have an effective opportunity to participate in the political process.

### 3.    Defendants' Five-District Proposal Dilutes Latino Voting Strength.

Finally, Defendants' proposal that the City be divided into five rather than seven districts further dilutes Latino voting strength, as it deprives Latinos of an additional opportunity district.

Plaintiffs' Illustrative Plan 1 demonstrates that a seven-district plan allows Latinos to have effective voter majorities in not one, but two districts. As discussed in Plaintiffs' Summary Judgment Motion, ECF No. 64 at 13-14, both Districts 1 and 2 in Illustrative Plan 1 include Latino registered voter majorities.  *See also* Khanna Decl., Ex. 1.  Courts routinely look to the registered voter population in ordering remedial plans.  *See, e.g.*, *Dickinson v. Ind. State Election Bd.*, 933 F.2d 497, 503 (7th Cir. 1991) ("The court may consider, at the remedial stage, what type of remedy is possible based on the factors traditionally examined in single-member districts, such as minority

---

[2] Plaintiffs are aware of no jurisdiction in Washington that employs a limited voting system for the deciding election, as Defendants propose here.  Yakima's existing election scheme uses a primary system under which the top two candidates for specific positions advance to the general election, but the deciding election is then a head-to-head matchup between two candidates.

MOTION FOR ENTRY OF PLS.'
PROPOSED REMEDIAL PLAN AND
INJUNCTION  – 11
LEGAL123638726.3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

voter registration and turn-out rates."); *see also* ECF No. 66-1 at 73 (Dr. Alford testifying that "a registered voter majority is probably a better indicator of having a majority district than is the CVAP number").

Defendants' five-district proposal, however, does not include a second district in which Latinos would have a fair opportunity to elect their candidates of choice. Creating five larger districts requires inclusion of a greater number of Latino voters in District 1 to create a majority-minority district, thereby diluting Latino voting strength in surrounding areas. As a result, while Plaintiffs' District 2 includes an LCVAP of 46.31%, Defendants' District 5 has an LCVAP of only 34.84%. Khanna Decl., Ex. 3 (Third Supplemental Cooper Report) ¶ 10. More telling, while Latinos comprise a 53.35% majority of registered voters in Plaintiffs' District 2, they comprise a mere 32.98% of registered voters in Defendants' District 5. *Id.* ¶ 11. Thus, while Plaintiffs' plan provides an opportunity for Latinos to elect their candidates of choice in two out of seven districts, Defendants' plan "would likely limit Latinos to a single seat on the Yakima City Council for many years to come." *Id.* ¶ 13.

Indeed, Defendants' failure to provide Latino opportunity districts in proportion to the Latino eligible voter population further evinces why their plan does not pass muster under Section 2. While Section 2 does not "establish[] a right to have members of a protected class elected in numbers equal to their proportion in the population," 42 U.S.C. § 1973(b), the Supreme Court has held that "proportionality" in the relationship between "the number of majority-minority voting districts" and "minority members' share of the relevant population" is relevant to a Section 2 analysis. *Johnson v. DeGrandy*,

MOTION FOR ENTRY OF PLS.'
PROPOSED REMEDIAL PLAN AND
INJUNCTION – 12
LEGAL123638726.3

512 U.S. 997, 1014 n.11 (1994); *see also id.* at 1000 (noting proportionality as relevant to the totality of circumstances).  In other words, where there is a disparity between the minority population and the number of minority opportunity districts, that imbalance is probative evidence of a Section 2 violation.[3]  *See Osceola Cnty.*, 474 F. Supp. 2d at 1256 (rejecting defendants' proposed remedy where the plaintiff's plan would provide Latinos "a reasonable opportunity to elect one out of five members of the Board (20%)" but "that opportunity is diluted" in the County's plan "to one out of seven (14%)"); *see also id.* (discussing evidence that with a board of seven members, the Hispanic community should have an opportunity to elect two board members (28%)).

Defendants' proposal fails the proportionality analysis.  Under Defendants' plan, Latinos would have a reasonable opportunity at just one seat out of seven (14.29%).  By contrast, Plaintiffs' Illustrative Plan 1 creates two districts in which Latinos comprise effective voter majorities, giving Latino voters an opportunity to elect their candidates of choice in two out of seven seats (28.57%).  Where the most recent available data indicates that Latinos comprise 26.54% of the citizen voting age population and 37.67% of the total

_____

[3] The Supreme Court has left open whether the appropriate measure of proportionality in this sense is the minority group's total population or eligible voter population.  *Johnson*, 512 U.S. at 1017 n.14, 1021 n.18.

MOTION FOR ENTRY OF PLS.'
PROPOSED REMEDIAL PLAN AND
INJUNCTION  – 13
LEGAL123638726.3

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

citizen population, Khanna Decl., Ex. 3 ¶ 3, Defendants' remedial plan fails to effectively capture the voting strength of this minority group.[4]

Defendants are no strangers to the merits of having a second Latino opportunity district.  In a recent public statement, they referred to their proposed District 5 as an "influence district" that "could potentially grow to be Latino majority as well over time."  *See* Mike Faulk, *Yakima, ACLU voting district plans remain far apart*, Yakima Herald Republic, Oct. 1, 2014, *available at* http://www.yakimaherald.com/home/2540870-8/yakima-aclu-voting-district-plans-remain-far-apart.  Defendants' recognition of the benefits of allowing multiple Latino opportunity districts only underscores the flaws in their own plan.  Rather than providing Latinos that opportunity *now*, commensurate with the current size of the Latino population and the Section 2 violation that community has long endured, Defendants ask Latinos to wait *several more years* for full and fair participation in the political process.  This wait-and-see approach is entirely unnecessary—and violates Section 2—where

_____

[4] In fact, in another case in which the defendants had proposed a 5-2 voting plan, Defendants' expert Dr. Alford attested that "[t]he most obvious way that Plaintiffs could demonstrate that a seven single member district plan might be superior for Hispanic representation to the five single member district plan, would be to show that the seven member plan would offer an increase in the number of districts expected to elect Hispanic candidates of choice."  Khanna Decl., Ex. 4 at 8.  Here, Plaintiffs have demonstrated just that.

MOTION FOR ENTRY OF PLS.'
PROPOSED REMEDIAL PLAN AND
INJUNCTION  – 14
LEGAL123638726.3

**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Latinos can have the opportunity to elect their candidates of choice in two of out seven districts today.[5]

**B.      The Court Should Adopt Plaintiffs' Illustrative Plan 1.**

For all of the foregoing reasons, the Court should reject Defendants' proposed remedial plan and adopt its own.  In so doing, the Court is governed by the "longstanding general rule that single-member districts are to be used in judicially crafted redistricting plans." *Citizens for Good Gov't v. City of Quitman, Miss.*, 148 F.3d 472, 476 (5th Cir. 1998) (citing *Connor v. Finch*, 431 U.S. 407, 415 (1977)); *see also Wise*, 437 U.S. at 540 ("[A] court-drawn plan should prefer single-member districts over multimember districts, absent persuasive justification to the contrary.").  This requirement reflects recognition that "the practice of multimember districting can contribute to voter confusion, make legislative representatives more remote from their constituents, and tend to submerge electoral minorities and overrepresent electoral majorities." *Connor*, 431 U.S. at 415.  Accordingly, unless the Court can articulate a "singular combination of unique factors" that justifies abandonment of this clear preference, *Mahan v. Howell*, 410 U.S. 315, 333 (1973), the Court must impose single-member districts.  *See also Corder v. Kirksey*, 639 F.2d 1191, 1195 (5th Cir. 1981) ("[T]he unique or special

_____

[5] To the extent Defendants contend that their proposed District 5 might reach majority-minority status by 2020 or later, they ignore that the City is required to change district lines upon each decennial census, pushing the mirage of minority voting opportunity further into the future.

MOTION FOR ENTRY OF PLS.'
PROPOSED REMEDIAL PLAN AND
INJUNCTION  – 15
LEGAL123638726.3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

circumstances allowing for a court-fashioned election scheme incorporating an at-large element [are] circumstances encompassing the rare, the exceptional, not the usual and diurnal.") (internal quotation marks and citation omitted).

Plaintiffs' Illustrative Plan 1 provides a full and complete remedy to the City of Yakima's Section 2 violation.  First, it encompasses seven single-member districts, in accordance with the rules governing judicial districting plans.  Second, as noted above, Illustrative Plan 1 provides not one, but two Latino opportunity districts, consistent with Latinos' share of the voting population and Supreme Court precedent.  Third, the Court has already indicated that Illustrative Plan 1 meets the "compactness" requirement of *Gingles* 1, Op. at 21-23, which incorporates consideration of traditional districting principles, *id.* at 27; *see also* ECF No. 64 at 17-18.  Indeed, Plaintiffs first provided Illustrative Plan 1 and its underlying data to Defendants in February 2013, *see* ECF No. 66-1 at 123-24, and Defendants have offered no practical objection on the record, even though they understood that plan would likely be offered as a remedy, *see* ECF Nos.  67 at 7, 85 at 11.

Accordingly, Plaintiffs submit that the Court should adopt Illustrative Plan 1 as the Court-ordered remedy for the Yakima's Section 2 violation.[6]

_____

[6] Courts frequently adopt plaintiffs' proposed plans as their own as remedies for Section 2 violations.  *See, e.g.*, *Large*, 670 F.3d at 1136, 1148 (affirming district court's "reject[ion] [of] the Board's proposal in favor of a plan with five single-member districts, as initially proposed by the Appellees"); *Harvell*, 126 F.3d at 1042 (affirming district court's adoption of plaintiffs' plan); *Dallas*

**C.      The Court Should Immediately Implement the Remedial Map.**

Finally, Plaintiffs respectfully submit that the Court should implement the remedial map in advance of the upcoming 2015 City Council election. Specifically, the Court should order that all seven City Council positions will appear on the 2015 ballot.  An effective remedy requires prompt implementation.  *See Desena v. Maine*, 793 F. Supp. 2d 456, 462 (D. Me. 2011) ("Constitutional violations, once apparent, should not be permitted to fester; they should be cured at the earliest practicable date.").  In fact, it is not uncommon for courts to order immediate special elections to ensure compliance with Section 2 upon finding a violation.  *See Neal v. Harris*, 837 F.2d 632, 634 (4th Cir. 1987) ("The special election . . . is not a distinct remedy. It is merely a vehicle for the immediate implementation of the remedy provided in the court's decree."); *Clark v. Roemer*, 777 F. Supp. 471, 484 (M.D. La. 1991) ("'[T]his Court and other District Courts have found that where a governing body has been elected under . . . an election scheme such as at-large elections, cancelling out the voting strength of a cognizable portion of the populace, thus denying them access to the political process, prompt new

_____

*Cnty. Comm'n*, 850 F.2d at 1443 (directing district court to adopt plaintiffs' plan); *Osceola Cnty.*, 474 F. Supp. 2d at 1256 (approving "United States' Proposed Remedial Plan 2"); *Dillard*, 649 F. Supp. at 298 (requiring implementation of plaintiffs' plan); *see also LULAC*, 648 F. Supp. at 598 (adopting two minority districts as drawn by plaintiffs and allowing defendants "to draw the remaining single-member district lines").

MOTION FOR ENTRY OF PLS.'
PROPOSED REMEDIAL PLAN AND
INJUNCTION  – 17
LEGAL123638726.3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

elections are appropriate.'") (quoting *Wallace v. House*, 377 F. Supp. 1192, 1201 (W.D. La. 1974)).

As the Court found, Latinos did not have an equal opportunity to elect the current councilmembers elected under the existing system (almost all of whom have been on the City Council more than five years). A lengthy process of implementing single-member districts will perpetuate that unlawful system. And if all council seats are not up for election in 2015, Yakima voters will be confronted with a hodgepodge of a transitional system that will likely confuse voters and require some voters to wait years to elect a councilmember from their particular geographic district.

The City currently uses "staggered terms" for City Council positions. If Plaintiffs' Illustrative Plan 1 is implemented, Plaintiffs have no objections to the City continuing this electoral practice. Preservation of the staggered term system is simple to accomplish, and how to do so is delineated by state law. For cities using a council-manager form of government, such as Yakima, City Council positions are elected for four-year terms "[e]xcept for the initial staggering of terms." RCW 35.18.020(2). That is, the first election run under a new voting system can utilize less than four-year terms to accomplish the staggering of terms.

Here, Plaintiffs propose that the Court would accomplish "the initial staggering of terms" by ordering that all City Council positions be up for election in 2015. Four positions would be elected to a four-year term of office. Three positions would be elected to a two-year term of office, and would be up for reelection in 2017, this time for a four-year term. For the sake of

MOTION FOR ENTRY OF PLS.'
PROPOSED REMEDIAL PLAN AND
INJUNCTION – 18
LEGAL123638726.3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

administrative ease, Plaintiffs' proposed injunction would have odd-numbered and even-numbered positions designated for an initial four-year and two-year term, respectively.[7]  This is consistent with the initial staggering of terms that is mandated by state law when a reorganization is adopted pursuant to statutory processes.  *See* RCW 35A.02.050.

## IV.   CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court reject Defendants' proposed remedy and adopt Plaintiffs' proposed remedial plan and injunction.

DATED: October 3, 2014          *s/ Kevin J. Hamilton*

Kevin J. Hamilton, WSBA No. 15648
Abha Khanna, WSBA No. 42612
William B. Stafford, WSBA No. 39849
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Fax: 206.359.9000
Email: KHamilton@perkinscoie.com

---

[7] Other ways of accomplishing the initial staggering of terms are possible, such as giving primary consideration to the residences or current terms of sitting councilmembers, or the geographic dispersion of seats.  Plaintiffs believe that a neutral odds/evens method of staggering seats is sensible and easy to administer, but are open to alternatives, including a renumbering of districts in Illustrative Plan 1.  Because the parties disagreed as to the fundamental issue of whether all seats should be up for a vote in 2015, they were not able to reach the ancillary issue of how to accomplish an initial staggering of terms.

MOTION FOR ENTRY OF PLS.'
PROPOSED REMEDIAL PLAN AND
INJUNCTION  – 19
LEGAL123638726.3

Email:  AKhanna@perkinscoie.com
Email:  WStafford@perkinscoie.com

*s/ Sarah A. Dunne*
Sarah A. Dunne, WSBA No. 34869
La Rond Baker, WSBA No. 43610
AMERICAN CIVIL LIBERTIES UNION OF
WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
Telephone: (206) 624-2184
Email: dunne@aclu-wa.org
Email: lbaker@aclu-wa.org


*s/ Joaquin Avila*
Joaquin Avila (*pro hac vice*)
P.O. Box 33687
Seattle, WA 98133
Telephone: (206) 724-3731
Email: joaquineavila@hotmail.com

*s/ M. Laughlin McDonald*
M. Laughlin McDonald (*pro hac vice*)
ACLU Foundation
230 Peachtree Street, NW Suite 1440
Atlanta, Georgia 30303-1513
Telephone: (404) 523-2721
Email: lmcdonald@aclu.org

**Attorneys for Plaintiffs**

MOTION FOR ENTRY OF PLS.'
PROPOSED REMEDIAL PLAN AND
INJUNCTION  – 20
LEGAL123638726.3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# CERTIFICATE OF SERVICE

I certify that on October 3, 2014, I electronically filed the foregoing

Motion for Entry of Plaintiffs' Proposed Remedial Plan and Final Injunction

with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to the following attorney(s) of record:

| | | |
|---|---|---|
| Francis S. Floyd WSBA 10642<br>John Safarli WSBA 44056<br>Floyd, Pflueger & Ringer, P.S.<br>200 W. Thomas Street, Suite 500<br>Seattle, WA 98119<br>(206) 441-4455<br>ffloyd@floyd-ringer.com<br>jsafarli@floyd-ringer.com | *Counsel for*<br>*Defendants* | ☒ VIA CM/ECF<br>SYSTEM<br>☐ VIA FACSIMILE<br>☐ VIA MESSENGER<br>☐ VIA U.S. MAIL<br>☐ VIA EMAIL |

I certify under penalty of perjury that the foregoing is true and correct. DATED:

October 3, 2014                    **PERKINS COIE LLP**

s/Abha Khanna
Abha Khanna, WSBA No. 42612
AKhanna@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
(206) 359-8312

Attorney for Plaintiffs

MOTION FOR ENTRY OF PLS.'
PROPOSED REMEDIAL PLAN AND
INJUNCTION  – 21
LEGAL123638726.3