1
2
3
4
5                     UNITED STATES DISTRICT COURT

6                     EASTERN DISTRICT OF WASHINGTON

7    ROGELIO MONTES, et al.,

8                          Plaintiffs,              NO:  12-CV-3108-TOR

9         v.                                        ORDER RE: PLAINTIFFS' MOTION
                                                    FOR COSTS AND ATTORNEYS'
10   CITY OF YAKIMA, et al.,                        FEES

11                         Defendants

12        BEFORE THE COURT is Plaintiffs' Motion for Award of Costs and

13   Reasonable Attorneys' Fees (ECF No. 147).  This matter was submitted for

14   consideration without oral argument.  The Court has reviewed the briefing and the

15   record and files herein, and is fully informed.

16                              BACKGROUND

17        Plaintiffs filed a complaint on August 22, 2012, alleging that the electoral

18   system in the city of Yakima, Washington, violated Section 2 of the Voting Rights

19   Act, 52 U.S.C. § 10301.  ECF No. 1.  On August 22, 2014, the Court granted

20   Plaintiffs' motion for summary judgment and ordered the parties to jointly file a

ORDER RE: PLAINTIFFS' MOTION FOR ATTORNEYS' FEES ~ 1

proposed remedial districting plan.  ECF No. 108.  The parties did not come to

agreement on a districting plan and submitted opposing plans.  ECF Nos. 113; 117.

On February 17, 2015, the Court issued a Final Injunction evaluating the proposed

plans and adopting Plaintiffs' plan as the only plan which effectively remedied the

Section 2 violation.  ECF No. 143.  Plaintiffs now move the Court for an award of

attorneys' fees in the amount of $2,473,358.00 and costs and expenses in the

amount of $404,261.19.  ECF Nos. 147; 155; 166.  Defendants have objected to the

reasonableness of these amounts.  ECF No. 158.

## DISCUSSION

In an action to enforce the Voting Rights Act "the court, in its discretion,

may allow the prevailing party . . . a reasonable attorney's fee, reasonable expert

fees, and other reasonable litigation expenses as part of the costs."  52 U.S.C.

§ 10310(e).  The parties do not dispute that Plaintiffs are the prevailing party in

this matter, nor that an award of fees and costs is appropriate.

## I. Attorneys' Fees

In calculating the reasonableness of attorneys' fees, the Ninth Circuit uses

the "lodestar" method, which involves multiplying the number of hours reasonably

expended on the litigation by a reasonable hourly rate.  *Camacho v. Bridgeport

Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).  When determining the

reasonableness of the attorney's proposed hourly rate, the district court looks to

hourly rates prevailing in the relevant legal community for similar work performed

by attorneys of comparable skill, experience, and reputation. *Ingram v. Oroudjian*,

647 F.3d 925, 928 (9th Cir. 2011) (per curiam). The "relevant legal community" is

generally the forum in which the district court sits. *Gates v. Deukmejian*, 987 F.2d

1392, 1405 (9th Cir. 1992). When determining the reasonableness of the hours

expended, a district court should exclude hours that are "excessive, redundant, or

otherwise unnecessary" and must provide a "concise but clear" explanation of its

reasons for the fee award. *Id.* at 1397, 1398 (quoting *Hensley v. Eckerhart*, 461

U.S. 424, 434 (1983)). "By and large, the district court should defer to the winning

lawyer's professional judgment as to how much time he or she was required to

spend on the case." *Ryan v. Editions Ltd. West*, ___ F.3d ___, Nos. 12-17810, 13-

15061, 2015 WL 2365954, at *6 (9th Cir. May 19, 2015) (brackets omitted)

(quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).

        "Although in most cases, the lodestar figure is presumptively a reasonable

fee award, the district court may, if circumstances warrant, adjust the lodestar to

account for other factors which are not subsumed within it." *Camacho*, 523 F.3d at

978 (internal quotation marks and citation omitted). The district courts are guided

by the following non-exclusive *Kerr* factors: (1) the time and labor required; (2)

the novelty and difficulty of the questions involved; (3) the skill required to

perform the legal service properly; (4) the preclusion of other employment by the

attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *see Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1264 n.11 (9th Cir. 1987) (noting that the district court need not address every *Kerr* factor).

"The factors enunciated by [the Ninth Circuit] in *Kerr* were intended to provide district courts with guidance in making the determination of the number of hours reasonably expended on litigation and the reasonable hourly rate." *Chalmers v. City of L.A.*, 796 F.2d 1205, 1211 (9th Cir. 1986). Thus, once the court calculates the initial lodestar figure, "the district court may consider other factors in determining whether to adjust the fee upward or downward." *Id.* at 1212 (citing *Hensley*, 461 U.S. at 434).[1] Where the Court reduces the requested fees by a

---

[1] Although several *Kerr* factors may be relevant to determine whether to adjust a fee award after the initial lodestar calculation, "[t]he Supreme Court has noted . . . that the *Kerr* factors are largely subsumed within the initial calculation of reasonable hours expended at a reasonable hourly rate, rather than the subsequent

ORDER RE: PLAINTIFFS' MOTION FOR ATTORNEYS' FEES ~ 4

significant amount, it should "provide a specific articulation of its reasons for reducing the award." *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1135, 1136 (9th Cir. 2012).

Here, Plaintiffs request a total fee award of $2,473,358.00. ECF No. 166 at 11. The following chart represents Plaintiffs' requested hours and hourly rates for each attorney and paralegal:

| Name | Position | Requested Rate | Requested Hours[2] |
|---|---|---|---|
| Joaquin Avila | Consulting Expert in Voting Rights Act | $725.00 | 24.4 |
| Moffatt McDonald | Consulting Expert in Voting Rights Act | $450.00 | 73.4 |
| Sarah Dunne | Legal Director, ACLU, Washington State | $420.00 | 256.3 |
| La Rond Baker | Staff Attorney, ACLU | $350.00 | 1666.9 |
| Kevin Hamilton | Partner, Perkins Coie | $650.00 | 348.2 |
| William Stafford | Counsel, Perkins Coie | $485.00 | 634.5 |
| Noah Purcell | Associate, Perkins Coie | $400.00 | 185.5 |
| Ulrike Connelly | Associate, Perkins Coie | $410.00 | 302.9 |

determination of whether to adjust the fee upward or downward." *Chalmers*, 796 F.2d at 1212 (citing *Hensley*, 461 U.S. at 434 n.9).

[2] The requested hours include both hours for the underlying litigation as well as hours for pursuing the fee claim. *See* ECF No. 166-1; *Clark v. City of L.A.*, 803 F.2d 987, 992 (9th Cir. 1986) ("[T]ime spent in establishing entitlement to an amount of fees awardable . . . is compensable.").

ORDER RE: PLAINTIFFS' MOTION FOR ATTORNEYS' FEES ~ 5

| Abha Khanna | Counsel, Perkins Coie | $485.00 | 1289 |
| Mica Simpson | Associate, Perkins Coie | $335.00 | 122 |
| Dominic Caucci | Document Review Attorney | $125.00 | 60 |
| Rebecca Davidson | Document Review Attorney | $125.00 | 51 |
| Shaun Franklin | Document Review Attorney | $125.00 | 54.2 |
| Daryl Huntsinger | Document Review Attorney | $125.00 | 52.5 |
| Jeannette Ramirez | Document Review Attorney | $125.00 | 66 |
| Nandini Rao | Document Review Attorney | $125.00 | 52.5 |
| Jay Smith | Document Review Attorney | $125.00 | 66 |
| Aaron Valla | Document Review Attorney | $125.00 | 68.2 |
| Jeffrey Williams | Document Review Attorney | $125.00 | 84.5 |
| Elva Gonzalez | Paralegal | $265.00 | 120.3 |
| Kimball Mullins | Paralegal | $265.00 | 894.3 |

ECF Nos. 147-1, 166-1.

Defendants have raised a number of objections to the reasonableness of the hourly rates claimed and to the number of hours worked. ECF No. 158. The Court has thoroughly reviewed the itemized billing and affidavits submitted by Plaintiffs' counsel as well as Defendants' objections. The Court makes the following findings regarding Plaintiffs' proposed fee award.

A. Reasonableness of Hourly Rates

Plaintiffs have requested hourly rates commensurate with rates for attorneys with comparable skill, experience, and reputation in the Seattle, Washington, metropolitan area. ECF Nos. 147 at 9–11; 166 at 3–5. Defendants contend that the Court should award hourly rates commensurate to rates within the Eastern District of Washington. ECF No. 158 at 22–24.

ORDER RE: PLAINTIFFS' MOTION FOR ATTORNEYS' FEES ~ 6

"Generally, the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). "However, rates outside the forum may be used 'if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" *Id.* (quoting *Gates*, 987 F.2d at 1405). The party requesting rates from outside the local forum bears the burden of presenting evidence that those rates "are necessary to the enforcement of civil rights cases" in the local forum and that local rates would "preclude the attraction of competent counsel." *Id.* at 501. Absent such evidence, a request for outside rates "remains too theoretical to warrant departure from the local forum rule." *Id.*

Plaintiffs assert that Seattle rates are appropriate because "Plaintiffs' counsel is primarily based in Seattle" and "have specialized expertise in political law litigation, including Voting Rights Act litigation." ECF No. 147 at 10. Plaintiffs also argue that Seattle rates are appropriate because Defendants themselves secured counsel from Seattle. *Id.* at 11. Finally, Plaintiffs contend that they "are not aware of any attorneys practicing in Yakima with prior Sections 2 experience" and that "this case presented an issue unpopular in Yakima that likely would have deterred local counsel." *Id.*

1    These reasons do not support a departure from the general rule that the Court

2  should apply the reasonable rates of the local forum.  First, the facts that

3  Defendants retained counsel in Seattle and that Plaintiffs have experience in the

4  area of civil rights litigation are irrelevant to the Court's initial analysis of whether

5  non-forum rates should be used.  The Court's inquiry begins with examining the

6  availability of counsel *within* the forum before turning outward.  *See Barjon*, 132

7  F.3d at 501 ("[P]laintiffs must only prove the unavailability of counsel *within* the

8  local forum in order to justify the use of outside counsel." (emphasis in original)).

9    Second, while Plaintiffs assert they are not aware of any Yakima attorneys

10 with prior Section 2 experience, they have not provided the Court with evidence

11 that qualified attorneys were not available anywhere in the local forum.  Plaintiffs

12 must "prove the unavailability of counsel within the local forum in order to justify

13 the use of outside counsel."  *Id.* (emphasis omitted); *see also Moreno*, 534 F.3d at

14 1111 ("In making the award, the district court must strike a balance between

15 granting sufficient fees to attract qualified counsel to civil rights cases, and

16 avoiding a windfall to counsel.  The way to do so is to compensate counsel at the

17 prevailing rate in the community for similar work; no more, no less." (internal

18 citations omitted)).

19   Plaintiffs have submitted a total of ten affidavits in support of their fee

20 request.  ECF Nos. 148–154, 167–169.  The only reference to the availability of

ORDER RE: PLAINTIFFS' MOTION FOR ATTORNEYS' FEES ~ 8

counsel within the forum is Sarah Dunne's statement that, "In retaining Perkins Coie as cooperating counsel, I determined that this litigation would require a special expertise in the Voting Rights Act not found in the local Yakima market." ECF No. 149 at ¶ 12.  This unsupported assertion is insufficient to carry Plaintiffs' burden to show that local counsel was either unable or unwilling to handle the case.  Moreover, in response to Plaintiffs' motion, Defendants have provided the Court with the declaration of Thomas D. Cochran, a partner at Witherspoon Kelley Davenport & Toole, who avers that there are several firms in Eastern Washington who could have aptly represented Plaintiffs.  ECF No. 160.  Plaintiffs have not rebutted that evidence in their reply briefing or affidavits.  *See* ECF Nos. 166, 168, 169.

Plaintiffs have failed to carry their burden to present evidence justifying departure from the local forum rule.  *See Barjon*, 132 F.3d at 500–502 (concluding the court did not abuse its discretion in ruling the evidence submitted was insufficient to show competent local counsel was unavailable).  As such, the Court will apply the local forum rates.  The Court must therefore determine reasonable rates within the local forum for attorneys of comparable skill, experience, and reputation.[3]

---

[3] Defendants do not object to the rates requested for Plaintiffs' consulting Voting Rights Act experts, Joaquin Avila and Moffatt McDonald.  *See* ECF No. 158 at

1    "[T]he burden is on the fee applicant to produce satisfactory evidence—in

2    addition to the attorney's own affidavits—that the requested rates are in line with

3    those prevailing in the community for similar services by lawyers of reasonably

4    comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 904

5    (1984).  Plaintiffs, however, have submitted no evidence of what they consider to

6    be reasonable rates within the forum.  Defendants have submitted the testimony of

7    Thomas Cochran who opines as to a range of reasonable hourly rates within the

8    forum for each participating attorney and paralegal.  ECF No. 160 at 5–7.  These

9    ranges are commensurate with the Court's own knowledge of hourly rates within

10   this forum.  *See Ingram*, 647 F.3d at 928 ("[T]he district court did not abuse its

11   discretion either by relying, in part, on its own knowledge and experience . . . .").

12   The Court finds that the requested rate of $265 an hour for paralegal work is

13   unreasonable and that a rate of $90 an hour is appropriate within this forum.

14

15   22–24.  The Court's review of the consulting attorneys' extensive skill, experience

16   and reputation in litigating Voting Rights Act matters supports the amounts

17   requested.  *See* ECF No. 150 (McDonald affidavit), 151 (Avila affidavit).

18   Defendants also do not object to the rates requested for Plaintiffs' document

19   review attorneys.  ECF No. 158 at 24.  The Court likewise agrees that $125 an hour

20   for document review is a reasonable rate.

ORDER RE: PLAINTIFFS' MOTION FOR ATTORNEYS' FEES ~ 10

1    The Court finds that Sarah Dunne's background, years and quality of

2  experience would warrant a reasonable fee in this forum of $400 an hour.  Ms.

3  Dunne is a 1998 law school graduate with federal clerkship experience and

4  significant United States Department of Justice, Civil Rights Division experience.

5  ECF No. 149 at ¶¶ 3–6.

6    The Court finds that La Rond Baker is a 2010 law school graduate and a

7  staff attorney with the ACLU since 2011.  *Id.* at ¶¶ 7–8.  Given her much more

8  limited background and years of experience, the Court agrees with Mr. Cochran

9  that a reasonable fee in this forum would be $230 an hour for her services.

10    The Court finds that William "Ben" Stafford is a 2007 law school graduate

11  who joined Perkins Coie that same year.  ECF No. 148 at ¶ 2.  With less than eight

12  years of experience, a reasonable fee in this forum would be $280 an hour.  Like

13  Mr. Stafford, Abha Khanna has less than eight years of experience, having also

14  graduated from law school in 2007.  *Id.* at ¶ 7.  She completed two clerkships and

15  joined Perkins Coie in 2010.  *Id.*  The Court rejects Mr. Cochran's suggestion that

16  her rate should not be more than $250 an hour and finds that her reasonable fee

17  would be $280 an hour in this forum.

18    The Court finds that Kevin Hamilton is a 1985 law school graduate,

19  completed two clerkships, and joined Perkins Coie in 1988.  *Id.* at ¶¶ 5–6.  His

20  significant experience warrants a reasonable fee of $400 an hour in this forum.

ORDER RE: PLAINTIFFS' MOTION FOR ATTORNEYS' FEES ~ 11

The Court finds that Noah Purcell and Ulrike Connelly joined Perkins Coie in 2010. *Id.* at ¶¶ 4, 8. Ms. Connelly graduated law school in 2009, but no information was provided concerning Mr. Purcell's graduation. *Id.* at ¶¶ 4, 8. Mr. Purcell completed a federal clerkship. *Id.* at ¶ 4. Mr. Purcell left Perkins Coie within three years and Ms. Connelly has less than five years of experience. *Id.* at ¶¶ 4, 8. The Court rejects Mr. Cochran's suggestion that Mr. Purcell's current position, in part, warrants a higher fee than his past experience would dictate. The Court finds a fee of $250 an hour to be a reasonable fee in this forum for each attorney.

The Court finds Mica Simpson joined Perkins Coie in 2013 but she did not provide the court with her graduation date, years of experience or any significant information to warrant an increased fee. *Id.* at ¶ 9. With this limited information, the Court finds her reasonable fee would be $210 an hour.

Thus, the Court finds the following rates are reasonable as evidenced by Mr. Cochran's opinion, the Court's own knowledge of local rates, and the skill, experience, and reputation of each attorney:

| Name | Position | Reasonable Rate |
|---|---|---|
| Sarah Dunne | ACLU Legal Director, Washington State | $400.00 |
| La Rond Baker | ACLU staff attorney | $230.00 |
| Kevin Hamilton | Partner, Perkins Coie | $400.00 |
| William Stafford | Counsel, Perkins Coie | $280.00 |

ORDER RE: PLAINTIFFS' MOTION FOR ATTORNEYS' FEES ~ 12

| Noah Purcell | Associate, Perkins Coie | $250.00 |
| Ulrike Connelly | Associate, Perkins Coie | $250.00 |
| Abha Khanna | Counsel, Perkins Coie | $280.00 |
| Mica Simpson | Associate, Perkins Coie | $210.00 |

The Court will apply these reasonable hourly rates in its lodestar calculation.

### B. Reasonableness of Hours Expended

Defendants contend that Plaintiffs' requested hours are unreasonable. First, Defendants argue Plaintiffs "spent a disproportionate amount of time on the Senate factors," that these factors "had little to no effect on the outcome of the case," and therefore "Plaintiffs should not be rewarded for pursuing this legal strategy." ECF No. 158 at 27–29. Second, Defendants argue that Plaintiffs engaged in "excessive amounts of block-billing in this case [that] warrant a reduction of at least 20%." *Id.* at 31. Third, Defendants argue that Plaintiffs' counsel should not recover fees for pre-litigation investigation and locating clients. *Id.* at 32. Fourth, Defendants argue that Plaintiffs "frequently used double billing and otherwise used multiple attorneys when fewer would suffice." *Id.* at 32–33. Finally, Defendants argue that certain hours spent by a paralegal to teach other members of the legal team how to use a document management system are not recoverable. *Id.* at 34.

The Court should exclude from its initial lodestar calculation "hours that were not reasonably expended." *Gates*, 987 F.2d at 1397 (quoting *Hensley*, 461 U.S. at 433). The Court must review the requested hours and should exclude hours

ORDER RE: PLAINTIFFS' MOTION FOR ATTORNEYS' FEES ~ 13

that are "excessive, redundant, or otherwise unnecessary." *Id.* The fee applicant bears the initial "burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Id.* The party opposing the fee application then "has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Id.* at 1397–98.

As an initial matter, the Court finds Plaintiffs' summarization of time records sufficiently reliable as evidence of hours spent on this case. Other than objecting to Plaintiffs' block-billing format, Defendants do not argue differently. Because the Court finds Plaintiffs' billing format sufficiently detailed, as discussed below, Plaintiffs have met their initial burden. After discussing block-billing, the Court turns to each of Defendants' arguments as to why certain hours should be reduced or excluded.

### i. Block Billing

Defendants argue that Plaintiffs' total fee award should be reduced by 20% based upon excessive block billing. ECF No. 158 at 31. "Block billing is the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007)

1    (internal quotation marks and citation omitted).  Block billing can make it more

2    difficult for a district court to determine whether the time spent on each activity

3    was reasonable and may thereby preclude a fee applicant from carrying the burden

4    to demonstrate the reasonableness of hours expended.  *Id.* at 948.  As such, a court

5    may, in its discretion, reduce the applicant's proposed hours, provided the court

6    explains why the reduction "fairly balances" the hours that were actually billed in

7    block format.  *Id.*  The use of block billing does not justify an across-the-board

8    reduction of all hours.  *Id.*

9        Defendants contend that a total of 5,191.7 hours, or 81.28% of Plaintiffs'

10   total hours, were entered in block-billing fashion.  ECF No. 158 at 31.  Based upon

11   this, Defendants request an across-the-board reduction of 20%.  *See* ECF Nos. 158

12   at 31; 159-11.  As noted above, an across-the-board reduction is not justified, even

13   if more than 80% of Plaintiffs' hours were block-billed.

14       Regardless, the Court concludes that the billing provided by Plaintiffs is not

15   the type of block billing which precludes a fee applicant from demonstrating the

16   reasonableness of hours expended.  Block billing is problematic only when it

17   prevents the Court from determining whether the hours expended were reasonable

18   given the tasks accomplished.  *See Secalt S.A. v. Wuxi Shenxi Const. Mach. Co.,*

19   *Ltd.*, 668 F.3d 677, 690 (9th Cir. 2012) ("Though a small subset of the billing

20   entries list numerous tasks performed over multi-hour spans, it was not an abuse of

discretion for the district court to award the associated fees because counsel 'is not required to record in great detail how each minute of his time was expended.'" (quoting *Hensley*, 461 U.S. at 437 n.12)); *Sunstone Behavioral Health, Inc. v. Alameda Cty. Med. Ctr.*, 646 F. Supp. 2d 1206, 1217 (E.D. Cal. 2009) ("[E]ven where hours are block-billed, a district court should refrain from reducing fees until it first determines whether sufficient detail has been provided so that [the Court] can evaluate what the lawyers were doing and the reasonableness of the number of hours spent on those tasks." (internal quotation marks omitted)); *see also Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008) (affirming district court fee award where the "court concluded the invoices were sufficiently detailed to permit adequate review of the time billed to specific tasks . . . ."); *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000) (affirming district court fee award where block billing records sufficiently allowed the court to determine the reasonableness of hours expended).

The entries at issue in this case are not unadorned statements of time spent on generic categories of tasks. For example, one entry for 7.2 hours of work describes the tasks accomplished as:

> Review and provide comments and proofreading revisions regarding
> Cooper draft reply report; email with legal team regarding same;
> telephone conference with B. Cooper regarding same; confer with K.
> Hamilton and W. Stafford regarding reply report and expert
> depositions; confer with U. Connelly regarding research on J. Alford;
> telephone conference with D. Engstrom regarding reply report and

ORDER RE: PLAINTIFFS' MOTION FOR ATTORNEYS' FEES ~ 16

1
2
3

depositions; email with legal team regarding expert depositions; review letter from opposing counsel regarding same; confer with W. Stafford to review Montes documents and expert communications with Fraga and Contreras; draft summary email for S. Dunne's review of Montes documents[.]

4 ECF No. 147-1 at 46 (entry # 667).  Block billing is unacceptable where 7.2 hours

5 of work is, for example, described simply as, "working on *Montes* case" or

6 "reviewing documents and conferring with experts."  Plaintiffs' billing entries are

7 sufficient for the Court to determine whether the hours spent are reasonable given

8 the specific list of tasks accomplished.

9      Moreover, Defendants do not point to any particular portion of these detailed

10 entries to which they object (other than the broad categories of objections

11 discussed herein).  Given that it is not necessary to parse out a particular task and

12 the time it took to perform that task, the Court can determine whether the total

13 hours expended to accomplish each detailed list of tasks was reasonable.  As such,

14 the billing provided here is sufficient for Plaintiffs to carry their burden to

15 demonstrate that the hours expended were reasonable.

16      ii. Senate Factors

17      Defendants argue that the time Plaintiffs' counsel spent developing evidence

18 and argument related to the so-called "Senate factors" was disproportionate to their

19
20

ORDER RE: PLAINTIFFS' MOTION FOR ATTORNEYS' FEES ~ 17

1   "minimal importance" in resolving the merits of this case.[4]  ECF No. 158 at 8–9.

2   By Defendants' calculations, Plaintiffs spent over half their billing time on these

3   factors.  *Id.* at 8.  Defendants object to a full award of fees for this work because

4   the Court and Plaintiffs both agreed during the summary judgment litigation that

5   the Senate factors held little weight at that phase of the proceedings compared to

6   the importance attributed to the three *Gingles* factors.  *Id.* at 9, 27–31.  Thus,

7   Defendants request an across-the-board 30% reduction in hours.  ECF Nos. 158 at

8   31; 159-11.

9        This matter has not been a simple, run-of-the-mill case.  Litigation in this

10  case has been highly contested at all points.  Both sides spent considerable time

11  developing facts as well as preparing legal arguments and counter-arguments.

12  Defendants now request the Court to conclude that, in hindsight, the Plaintiffs

13  acted unreasonably in preparing an evaluation of the Senate factors, including

14  allegations of discrimination and unresponsiveness.  The Court will not engage in

15  such *post hoc* reasoning.  *See Dennis v. Chang*, 611 F.2d 1302, 1308 (9th Cir.

16  1980) ("[A]lthough hindsight might suggest that fewer hours were needed, the time

17  actually spent was reasonable and reflected good legal judgment, particularly

18  _____

19  [4] See *Thornburg v. Gingles*, 478 U.S. 30, 36–37, 44–45 (1986), for discussion on

20  the relevance of the Senate factors in Section 2 litigation.

ORDER RE: PLAINTIFFS' MOTION FOR ATTORNEYS' FEES ~ 18

because plaintiffs were never assured of early success." (internal quotation marks omitted)); *see also Berkla v. Corel Corp.*, 302 F.3d 909, 927 (9th Cir. 2002) (Sedwick, J., concurring in part and dissenting in part) ("[A] court ought not to [rely] on prior negotiations and hindsight to determine whether to cut off the award of fees lest those with meritorious claims be dissuaded from pursuing them.").

Instead, the Court evaluates whether Plaintiffs were acting reasonably at the time they pursued and developed their legal theory. *Gingles* expressly incorporated the Senate factors as a relevant aspect of Section 2 claims. 478 U.S. at 36–37, 44–45. These factors would likely have comprised a good portion of the evidence presented had the case proceeded to trial. Whether or not the Senate factors would actually become the dispositive issue in this case, it was reasonable for Plaintiffs to thoroughly prepare this aspect of the litigation. *See Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 700 (9th Cir. 1996) ("[A]lthough it may be easy, in hindsight, to tout this as an easy case, plaintiffs cannot be faulted for their thoroughness under the circumstances." (footnotes omitted)). It was not obvious before the summary judgment litigation that the Senate factors would hold less weight compared to the three *Gingles* factors, nor was a legal theory involving their evaluation wholly without merit. As such, there is no reason to conclude the Plaintiffs were pursuing a frivolous or otherwise unreasonable litigation strategy. *Cf. C.W. v. Capistrano Unified School Dist.*, 784

1    F.3d 1237, 1245–1246 (9th Cir. 2015).  The Court therefore concludes that the

2    time Plaintiffs expended developing the Senate factors was reasonable.[5]

3                            iii. Pre-litigation Investigation

4            Defendants argue that compensation for fees and costs for pretrial

5    investigation is unwarranted, "especially . . . given that the viability of a Section 2

6    claim can be easily evaluated using publicly available documents."  ECF No. 158

7    at 32.  Defendants also argue that "[i]t was unnecessary for Plaintiffs to devote

8    multiple attorneys over the course of several years to investigating a potential suit

9    against the City."  *Id.*

10           The fees provision of the Voting Rights Act does not expressly allow nor

11   disallow recovery of pre-litigation costs of investigation in preparation of filing a

12   suit.  *See* 52 U.S.C. § 10310(e) (allowing recovery of "reasonable litigation

13   expenses").  However, as the Supreme Court has recently observed, "some of the

14   services performed before a lawsuit is formally commenced by the filing of a

15   complaint are performed 'on the litigation,'" and therefore "[t]he fact that some of

16

---

17   [5] This conclusion encompasses Defendants' arguments that it was unreasonable for

18   Plaintiffs to retain two experts who evaluated certain Senate factors.  ECF No. 158

19   at 11.  The Court concludes that the retention of these experts was likewise

20   reasonable given the circumstances of this case.

ORDER RE: PLAINTIFFS' MOTION FOR ATTORNEYS' FEES ~ 20

the claimed fees accrued before the complaint was filed is inconsequential." *Ray*

*Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs &*

*Participating Eng'rs*, 134 S. Ct. 773, 782–83 (2014); *see also Dishman v. UNUM*

*Life Ins. Co. of Am.*, 269 F.3d 974, 987 n.51 (9th Cir. 2001) ("[A]ttorneys' fees for

work done on a lawsuit prior to filing of the lawsuit are recoverable.").

Furthermore, Federal Rule of Civil Procedure 11(b) requires litigants to ensure that

all presentations to the Court, including those in the complaint, have evidentiary

support "formed after an inquiry reasonable under the circumstances." Fed. R.

Civ. P. 11(b). Thus, a reasonable pre-litigation inquiry into the factual basis for

Plaintiffs' Section 2 claims is actually required by the federal rules of procedure.

Plaintiffs may recover reasonable fees and expenses for pre-litigation work

that was "both useful and of a type ordinarily necessary to advance the . . .

litigation in question." *Ray Haluch Gravel Co.*, 134 S. Ct. at 783. "Investigation,

preliminary legal research, drafting of demand letters, and working on the initial

complaint are standard preliminary steps toward litigation." *Id.* Plaintiffs may

also recover for reasonable expenses incurred "associated with the development of

the theory of the case," *id.*, as well as for "conferences with clients . . . and other

reasonable efforts directed toward the filing of the litigation." *Dishman*, 269 F.3d

at 988.

1      Plaintiffs' complaint was filed on August 22, 2012.  ECF No. 1.  Defendants

2  object to 203 hours of fees and $989.46 in expenses incurred prior to this filing.

3  ECF No. 158 at 32.  The Court has reviewed these hours and costs and makes the

4  following conclusions.  Voting Rights Act litigation requires an extensive factual

5  investigation involving expert analysis of demographics and electoral histories, as

6  well as the relevant Senate factors.  Plaintiffs' engagement of experts to collect and

7  analyze data relevant to these points—whether publicly accessible or not—was

8  reasonable.  Plaintiffs' efforts spent identifying witnesses and developing

9  testimonial evidence in advance of filing a properly supported complaint were

10  reasonable.  All fees relating to communication between counsel regarding the pre-

11  filing investigation and planned legal strategy are reasonable, as are hours spent

12  researching and drafting demand letters[6] and the complaint.  Plaintiffs' pre-

13  litigation costs for legal research (ECF No. 147-2 at 7), long-distance telephone

14  charges (ECF No. 147-2 at 8), and travel (ECF No. 147-2 at 31–32) are also

15  reasonable.[7]

16

17  [6] The Court includes in this category all correspondence with the city of Yakima

18  regarding requests for the city to alter its unconstitutional election practices.

19  [7] Defendants have not clearly identified the $989.46 of costs to which they object.

20  The Court has reviewed the entirety of the requested costs, ECF No. 147-2, and

ORDER RE: PLAINTIFFS' MOTION FOR ATTORNEYS' FEES ~ 22

Defendants have only raised one specific objection to Plaintiffs' pre-litigation investigation: 90.7 hours which were spent "trying to locate a client." ECF No. 158 at 32. The Court has reviewed the itemized hourly pre-litigation fees. ECF No. 147-1 at 2–12. Plaintiffs have identified hours spent performing community outreach to identify and meet with potential plaintiffs and witnesses. Given the nature of this lawsuit, which involves the effects of an unconstitutional voting system upon an entire minority group, Plaintiffs' counsel spent a reasonable amount of time reaching out to and meeting with the Latino community to identify those who were adversely affected by the system and those who had factual information relating to those adverse effects.

Voting Rights Act litigation not only requires extensive factual development, but it involves political processes that move at a relatively slow pace. Defendants' unsupported assertions that Plaintiffs' pre-litigation investigation was unreasonable, ECF No. 158 at 32, are not sufficient to demonstrate that the fees and costs incurred in the two years leading up to the filing of the complaint in this matter were unreasonable. *See Gates*, 987 F.2d at 1397–98 ("The party opposing the fee application has a burden of rebuttal that requires submission of evidence to

found pre-litigation expenses arise only in these three categories and in the expert fees discussed previously.

ORDER RE: PLAINTIFFS' MOTION FOR ATTORNEYS' FEES ~ 23

the district court challenging the reasonableness of the hours charged . . . .").  The

Court's independent review of the fees and costs indicates that these expenses

were, in fact, reasonable.

### iv. Duplicative Billing and Overstaffing

Defendants object to a number of entries for fees for tasks "that could have

been performed by one attorney (*e.g.*, defending a deposition) but [were]

performed by two or more."  ECF No. 158 at 32.  Specifically, Defendants object

to the fact that "Plaintiffs almost always had multiple attorneys attending or

defending depositions, and assigned more than one attorney to attend conference

calls with opposing counsel and hearings before this Court."  *Id.* at 33.  Defendants

also object to entries they characterize as representing redundant work—"work that

probably required more than one attorney (*e.g.*, a legal strategy meeting) but

involved excessive numbers of attorneys."  *Id.* at 32.  In this category, Defendants

specifically object to "62 weekly conference calls that usually involved three or

more members of Plaintiffs' legal team" as well as to "involving multiple attorneys

in fact witness interviews and excessive numbers of attorneys reviewing the same

document."  *Id.* at 33.  Defendants contend these two categories combined warrant

a 15% across-the-board reduction in the hours Plaintiffs request.  *Id.* at 33.

"The court may reduce the number of hours awarded because the lawyer

performed unnecessarily duplicative work, but determining whether work is

unnecessarily duplicative is no easy task." *Moreno*, 534 F.3d at 1112.  As the Ninth Circuit has recognized, "sometimes, 'the vicissitudes of the litigation process' will require lawyers to duplicate tasks." *Costa*, 690 F.3d at 1136 (quoting *Moreno*, 534 F.3d at 1113).  Consequently, "[f]indings of duplicative work should not become a shortcut for reducing an award without identifying just why the requested fee was excessive and by how much." *Id.* (quoting *Moreno*, 534 F.3d at 1113).

Similarly, while a court "should not hesitate to discount hours if it sees signs that a prevailing party has overstaffed a case," "[g]iven the complexity of modern litigation, the deployment of multiple attorneys is sometimes an eminently reasonable tactic . . . .  Effective preparation and presentation of a case often involve the kind of collaboration that only occurs when several attorneys are working on a single issue." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297 (1st Cir. 2001); *accord McGrath v. Cnty. of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995) ("We have also recognized that the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort." (internal quotation marks omitted)).  As such, "[c]ourts must exercise judgment and discretion, considering the circumstances of the individual case, to decide whether there was unnecessary duplication." *Democratic Party of Wash. v. Reed*, 388 F.3d 1281, 1286–87 (9th Cir. 2004) (internal quotation marks omitted).

1    Some of Plaintiffs' time entries do indicate that more than one attorney

2 participated in work that could, strictly-speaking, be accomplished by a single

3 attorney, such as reviewing draft documents, interviewing witnesses, and

4 participating in depositions.  However, given the circumstances of this case—its

5 legal and factual complexity, as well as its high-stakes and contentious nature—the

6 Court concludes that these entries nevertheless represent a reasonable expenditure

7 of counsel's time.

8    The Court also concludes that Plaintiffs did not request fees for hours that

9 can be attributed to overstaffing.  Plaintiffs have already voluntarily excluded

10 hours for attorneys and paralegals who were not part of the "core litigation team"

11 in this matter.  ECF No. 147 at 13–14.  The Court will not exclude time spent on

12 weekly conference calls where multiple attorneys discussed litigation strategy.  As

13 Defendants' own summation of these calls indicates, they were attended by

14 between two and a maximum of five attorneys, and lasted in general from half-an-

15 hour to an hour.  ECF No. 159-9.  Keeping a large team of attorneys working

16 efficiently and effectively on the same complex litigation requires regular

17 coordination and discussion, and the Court concludes time spent in these

18 conference calls was reasonably exerted to further the efficient resolution of this

19 matter.

20

1       "By and large, the court should defer to the winning lawyer's professional

2  judgment as to how much time he was required to spend on the case; after all, he

3  won, and might not have, had he been more of a slacker." *Moreno*, 534 F.3d at

4  1112.  Defendants have not articulated specific reasons nor presented evidence

5  demonstrating that the identified tasks were excessively staffed or duplicative—

6  that is, they have not shown, for example, that an extra set of eyes reviewing and

7  revising a pleading or an extra voice evaluating case status and proffering strategy

8  was unreasonable given the specific circumstances in this case.  Without such a

9  showing, the Court will not grant the 15% reduction Defendants request.  *See*

10  *Nadarajah v. Holder*, 569 F.3d 906, 920 (9th Cir. 2009) ("Indeed, '[i]f opposing

11  counsel cannot come up with specific reasons for reducing the fee request that

12  the . . . court finds persuasive, [the court] should normally grant the award in full,

13  or with no more than a haircut [that is, a small, 10 percent reduction].'" (quoting

14  *Moreno*, 534 F.3d at 1112, 1116) (alterations in original)); *McGrath*, 67 F.3d at

15  255 ("[T]he County offered no evidence to support either the reductions or its

16  claim that the hours originally charged were unnecessary.  The County may not

17  rely on conclusory challenges to plaintiffs' evidence. . . .  [T]he county did not

18  meet [its] . . . rebuttal burden of providing specific evidence that plaintiffs' hours

19  were duplicative or inefficient." (internal quotation marks and citation omitted)).

20  //

1

v. In-House Training

2    Defendants contend that 10.8 hours billed by a paralegal to teach other

3 members of the legal team how to use a document management system is not

4 recoverable because it is an in-house overhead expenditure.  ECF No. 158 at 34.

5 "'[R]easonable attorney's fees' include litigation expenses only when it is 'the

6 prevailing practice in a given community' for lawyers to bill those costs separately

7 from their hourly rates." *Trustees of Const. Indus. & Laborers Health & Welfare*

8 *Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006) (citing *Missouri v.*

9 *Jenkins*, 491 U.S. 274, 286–87 (1989)).  Only costs which "are typically charged to

10 paying clients by private attorneys" may be recovered as nontaxable litigation

11 costs.  *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010).

12    Plaintiffs have not defended these hours in their reply briefing.  *See* ECF No.

13 166 at 12 (defending only database hosting expenses, not the hours Ms. Gonzalez

14 spent teaching other members of Plaintiffs' legal team how to use the system).

15 Whether or not Plaintiffs concede this issue, the Court concludes that in-house

16 training on the use of document management software is not a cost that would be

17 charged to a client by private counsel, but is instead an overhead cost like any

18 other software training that law firms provide their employees from time to time.

19 As such, the Court will deduct the 10.8 hours (of block billing) that included

20

training on the document management system from the requested hours of Elva Gonzalez.

## C. Lodestar Calculation

Based upon the foregoing discussion, the Court finds the following hours and hourly rates reasonable:

| Name | Position | Rate | Hours |
|---|---|---|---|
| Joaquin Avila | Consulting Expert | $725.00 | 24.4 |
| Moffatt McDonald | Consulting Expert | $450.00 | 73.4 |
| Sarah Dunne | Legal Director, ACLU | $400.00 | 256.3 |
| La Rond Baker | Staff Attorney, ACLU | $230.00 | 1,666.9 |
| Kevin Hamilton | Partner, Perkins Coie | $400.00 | 348.2 |
| William Stafford | Counsel, Perkins Coie | $280.00 | 634.5 |
| Noah Purcell | Associate, Perkins Coie | $250.00 | 185.5 |
| Ulrike Connelly | Associate, Perkins Coie | $250.00 | 302.9 |
| Abha Khanna | Counsel, Perkins Coie | $280.00 | 1,289 |
| Mica Simpson | Associate, Perkins Coie | $210.00 | 122 |
| Dominic Caucci | Document Review Attorney | $125.00 | 60 |
| Rebecca Davidson | Document Review Attorney | $125.00 | 51 |
| Shaun Franklin | Document Review Attorney | $125.00 | 54.2 |
| Daryl Huntsinger | Document Review Attorney | $125.00 | 52.5 |
| Jeannette Ramirez | Document Review Attorney | $125.00 | 66 |
| Nandini Rao | Document Review Attorney | $125.00 | 52.5 |
| Jay Smith | Document Review Attorney | $125.00 | 66 |
| Aaron Valla | Document Review Attorney | $125.00 | 68.2 |
| Jeffrey Williams | Document Review Attorney | $125.00 | 84.5 |
| Elva Gonzalez | Paralegal | $90.00 | 109.5 |
| Kimball Mullins | Paralegal | $90.00 | 894.3 |

ORDER RE: PLAINTIFFS' MOTION FOR ATTORNEYS' FEES ~ 29

1   Accordingly, the court finds a total initial lodestar amount for fees to be

2   $1,521,911.50.  This amount is presumptively reasonable.  *See Camacho*, 523 F.3d

3   at 982.

4   D. Adjustment to Lodestar Calculation

5          Defendants contend that exceptional circumstances warrant further reduction

6   in the fee award.  ECF No. 158 at 34–35.  Specifically, Defendants argue that

7   Perkin Coie's pro bono status enabled them to "drive up the costs of litigation

8   without incurring any financial risks," and that the ACLU bore no financial risk in

9   this matter and therefore had no incentive to manage the case efficiently.  *Id.* at 34.

10  Defendants also argue that "Plaintiffs seek to create a chilling effect with the

11  specter of an enormous award of fees and expenses that will discourage local

12  governments from contesting future lawsuits brought under Section 2 or a potential

13  state-law equivalent."  *Id.* at 35.  Plaintiffs dispute these contentions, ECF No. 166

14  at 10–11, but have not sought a corresponding increase of the presumptively

15  reasonable lodestar amount.  ECF No. 147 at 16–17.

16         "While in most cases the lodestar figure is presumptively reasonable, in rare

17  cases, a district court may make upward or downward adjustments to the

18  presumptively reasonable lodestar on the basis of those factors set out in *Kerr* . . . ,

19  that have not been subsumed in the lodestar calculation."  *Camacho*, 523 F.3d at

20  982 (internal quotation marks and citation omitted); *see also Newman v. Piggie*

1  *Park Enters., Inc.*, 390 U.S. 400, 402 (1968) (holding that a successful civil rights

2  litigant "should ordinarily recover an attorney's fee unless special circumstances

3  would render such an award unjust").  The Court does not find that the

4  circumstances of this case warrant an adjustment in the lodestar calculation.

5        "The United States Supreme Court clarified long ago that the award of

6  attorneys' fees under civil rights fee-shifting statutes is not cost-based, and that the

7  award of prevailing market rates—regardless whether the claimant is represented

8  by private counsel or a non-profit legal services organization—should not be

9  viewed as an unjustified 'windfall' profit to the attorney." *Nadarajah*, 569 F.3d at

10  916; *see also Jenkins*, 491 U.S. at 285–86 ("[W]e rejected an argument that

11  attorney's fees for nonprofit legal service organizations should be based on cost.").

12  Perkin Coie's pro bono status and the ACLU's non-profit status are not relevant to

13  the Court's determination of reasonable fees in the prevailing market.  There is,

14  moreover, no indication beyond Defendants' unsupported claims that the status of

15  Plaintiffs' counsel encouraged mismanagement of this case.

16        Finally, the size of the award does not automatically make it unreasonable.

17  *See Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1158 (9th Cir. 2002).  The Court

18  does not agree that the lodestar-calculated award warrants reduction because it

19  "create[s] a chilling effect . . . that will discourage local governments from

20  contesting future lawsuits . . . ."  ECF No. 158 at 35.  An award of fees under the

ORDER RE: PLAINTIFFS' MOTION FOR ATTORNEYS' FEES ~ 31

1   circumstances of this case will not deter local governments from defending

2   constitutionally-sound electoral systems.

3        The city of Yakima chose to litigate this matter tenaciously, defending the

4   entrenched electoral system at every turn.  Yakima had every right to do so, but it

5   cannot now be heard to complain that an award commensurate to the time

6   Plaintiffs necessarily spent in response to this vigorous defense was unreasonable.

7   *Cf. City of Riverside v. Rivera*, 477 U.S. 561, 581 n.11 (1986) ("The government

8   cannot litigate tenaciously and then be heard to complain about the time

9   necessarily spent by the plaintiff in response." (quoting *Copeland v. Marshall*, 641

10  F.2d 880, 904 (D.D.C. 1980) (en banc))).  The Court finds no exceptional

11  circumstances in this matter that would warrant an adjustment to the presumptively

12  reasonable lodestar fee award.

13                              II. Costs and Expenses

14       In addition to attorneys' fees, the Voting Rights Act allows the prevailing

15  party to recover reasonable expert fees as well as "other reasonable litigation

16  expenses."  52 U.S.C. § 10310(e).  The party seeking to recover expenses bears the

17  burden of proving they are "reasonable out-of-pocket litigation expenses that

18  would normally be charged to a fee paying client."  *Redland Ins. Co.*, 460 F.3d at

19  1257; *Renfrow v. Draper*, 232 F.3d 688, 695 (9th Cir. 2000).

20

1    Plaintiffs assert they are entitled to recover $404,261.19 in costs and

2    expenses (comprised of $5,256.95 in taxable costs, ECF No. 155, and $399,004.24

3    in non-taxable expenses, ECF No. 147 at 21).  Aside from the broad categories

4    discussed above (*i.e.*, pre-litigation and Senate factor work), Defendants' only

5    objections to Plaintiffs' claimed expenses are the contentions that (1) $79,858.43

6    sought for "Electronic Discovery Database Hosting" is not recoverable, and (2)

7    $9,125.00 paid for redistricting plans developed by one of Plaintiffs' experts is not

8    recoverable.  ECF Nos. 158 at 16, 34; 159-11 at 3.

9                          A. Database Maintenance

10    As discussed briefly above, "'reasonable attorney's fees' include litigation

11    expenses only when it is 'the prevailing practice in a given community' for lawyers

12    to bill those costs separately from their hourly rates." *Redland Ins. Co.*, 460 F.3d

13    at 1258.  Expenses which "are typically charged to paying clients by private

14    attorneys" may be recovered as nontaxable litigation costs. *Grove*, 606 F.3d at

15    580.  Here, it is Plaintiffs' burden to demonstrate that the contested database

16    hosting is an expense typically paid by paying clients.

17    Neither party has presented binding or persuasive case law discussing the

18    recovery of fees for database hosting.  The Ninth Circuit has not examined this

19    issue, but has concluded that charges for computerized research are recoverable

20    only "if separate billing for such expenses is the prevailing practice in the local

ORDER RE: PLAINTIFFS' MOTION FOR ATTORNEYS' FEES ~ 33

1   community." *Id.* at 581 (internal quotation marks omitted).  Plaintiffs have

2   presented no evidence that the prevailing practice is to bill clients separately for

3   database hosting.  The record is insufficient for the Court to determine whether

4   database hosting is incorporated into Plaintiffs' overhead costs, such as normal

5   computer network operation, or whether there were unique costs associated with

6   the database in this matter that would otherwise be charged to a client.  As such,

7   Plaintiffs have not met their burden to establish that they are entitled to recovery of

8   this expense.  The Court therefore excludes from Plaintiffs' expenses $79,858.43

9   for database hosting.

10                                  B. Expert Fees

11          Defendants object to $9,125.00 paid to Plaintiffs' expert, William Cooper.

12   ECF No. 158 at 16.  Specifically, Defendants contend that "[b]ecause Mr.

13   Cooper's initial redistricting plan could not definitively establish the first *Gingles*

14   factor, he had to create constitutionally dubious alternative plans that contained

15   extreme disparities in eligible voter populations among districts." *Id.*  As such,

16   Defendants argue "that Mr. Cooper had earlier opportunities to create a

17   redistricting plan that adequately satisfied the first *Gingles* factor" and Plaintiffs

18   should therefore not recover expert fees incurred for the subsequent plans. *Id.*

19          This argument is without merit.  First, Mr. Cooper's initial plan did satisfy

20   the *Gingles* factors, it is the plan ultimately adopted by the Court.  Second, the

ORDER RE: PLAINTIFFS' MOTION FOR ATTORNEYS' FEES ~ 34

1    Court considered all submitted plans at both the summary judgment and remedy

2    stages as illustrative of the potential redistricting of the city.  *See, e.g.*, ECF No.

3    108 at 17–19.  Mr. Cooper's subsequent plans provided context for the Court's

4    resolution of the motion for summary judgment as well as the ultimate districting

5    that was ordered in this case.  The production of these subsequent plans was

6    neither frivolous nor unreasonable.  Finally, the subsequent plans were developed

7    to rebut Defendants' own arguments attacking Mr. Cooper's initial plan.  For these

8    reasons, the Court finds the claimed reduction is not warranted.

9                                    C. Other Expenses

10            Pursuant to Local Rule 54.1, the Clerk of Court taxed costs in the amount of

11   $3,641.50.  ECF No. 181.  While the Clerk of Court properly denied certain items

12   as taxable costs under 28 U.S.C. § 1920, they do however constitute reasonable

13   out-of-pocket litigation expenses that the Voting Rights Act allows the prevailing

14   party to recover under 52 U.S.C. § 10310(e).  Accordingly, the $80 in deposition

15   delivery and handling charges, the $599.35 for William Cooper's deposition

16   transcript, and the $936.10 in copying fees which were disallowed as taxable costs,

17   *see* ECF No. 181, shall be allowed as non-taxable expenses.

18            On the other hand, the $300 in pro hac vice admission fees (ECF No. 147-2

19   at 2) are expenses of the attorneys to practice in this forum, not something the

20   client should bear, and certainly not something the losing party should pay.  *Cf.*

ORDER RE: PLAINTIFFS' MOTION FOR ATTORNEYS' FEES ~ 35

*Kalitta Air LLC v. Central Texas Airborne System, Inc.*, 741 F.3d 955, 957–58 (9th Cir. 2013) (pro hac vice fees are not taxable as costs under § 1920).

The Court's foregoing adjustments result in allowable non-taxable expenses in the amount of $320,461.26.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Plaintiffs' Motion for Attorneys' Fees and Expenses (ECF No. 147) is **GRANTED in part**.  Plaintiffs are awarded attorney fees in the amount of $1,521,911.50, and non-taxable expenses in the amount of $320,461.26.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.  Since the Clerk of Court has taxed costs pursuant to LR 54.1,[8] an Amended Judgment shall be entered for the total amount of attorney fees ($1,521,911.50), and **total** amount of costs and expenses ($324,102.76), all accruing statutory interest and the file shall then be **CLOSED**.

**DATED** June 19, 2015.



THOMAS O. RICE
United States District Judge

---

[8] The Clerk awarded $3,641.50 for Plaintiffs' Bill of Costs:  $350.00 for fees of the Clerk, $3,154.25 for necessary transcripts, and $137.25 for printing.  ECF No. 181.

ORDER RE: PLAINTIFFS' MOTION FOR ATTORNEYS' FEES ~ 36